545 A.2d 334

**Ansy L. SCOTT, Appellant,**

v.

**EXTRACORPOREAL, INC.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1988.

Filed July 11, 1988.

92

Richard W. Rogers, Norristown, for appellant.

James E. Farrell, Jr., New Hope, for appellee.

Before TAMILIA, HOFFMAN and HESTER, JJ.

HESTER, Judge:

Ansy L. Scott appeals from the order of summary judgment entered in the Court of Common Pleas of Montgomery County on July 6, 1987. This action arose out of appellant's discharge from her employment with appellee-Extracorporeal, Inc. In this appeal, appellant alleges that the entry of summary judgment was improper since she was under a contract precluding her dismissal without just cause and due to the fact that the discharge contravened public policy. We affirm.

Appellant was hired by Extracorporeal in 1980 to work on its assembly line at its manufacturing facility in Valley Forge, Pennsylvania. Extracorporeal's business is the development, manufacture, and distribution of medical devices. Upon hiring appellant, a company manager told her the job would be "permanent" and that there would be "a lot of overtime." Appellant executed a document acknowledging that she would be a permanent employee following the successful completion of a ninety-day probationary period. A handbook was distributed setting forth numerous details about company policies.

On August 25, 1983, a disturbance involving appellant occurred on the floor of the plant. One of appellant's co-worker's on the assembly line, Frances Adaey, "talked very loud ... [about how] she was going to kick somebody's ass." Notes of Testimony, (N.T.), 10/17/86, at 18. Appellant attempted to ignore her. Ms. Adaey proceeded to insult appellant, stating that she knew a "state patient" when she saw one. Appellant's supervisor was informed of the disturbance, and he called all of the workers in the department into his office. The supervisor inquired about the disturbance and Ms. Adaey accused appellant of telling lies about her. The supervisor told those assembled he wanted the "nonsense" to stop. Ms. Adaey told him that she did not care what he said, that she and her husband were going to "kick some asses." *Id.* at 23. She told appellant that the remarks were directed at her. "I just ignored her and laughed," testified appellant, "and I told

her I wasn't afraid of her.... I said you hit me, I said I will hit you back." *Id.* The supervisor repeated his admonition that the disturbance must stop and dismissed the meeting. As appellant walked out the door, Ms. Adaey struck her on the head from behind, knocking her unconscious. When she awoke, she discovered Ms. Adaey's hand on her head. Ms. Adaey pulled hair from appellant's head. It required eight women to pull Ms. Adey from appellant. *Id.* 24–27. Both appellant and Ms. Adaey were sent home. Appellant was subsequently fired for fighting, and she filed suit against Extracorporeal. Summary judgment was entered in favor of the latter.

Our standard of review for orders of summary judgment is as follows:

> Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.... It is basic that summary judgment may be entered only in a case that is clear and free from doubt.

*Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 44–45, 489 A.2d 828, 831 (1988).

The employment at-will presumption holds that absent a contract to the contrary, an employee may be discharged for any or no reason. *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306 (1986).

Taking a nationwide view of the law in this area, it is apparent that what once was the *corpus juris* of employment relations has lately become an amorphous mass of confusion replete with holdings that defy reconciliation from one jurisdiction to the next. The at-will presumption, the citadel that once governed the field with such predictability, has been eroded of late by piecemeal attacks on both the contract and tort fronts and the entire field seems precariously perched on the brink of change.

*Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 208, 511 A.2d 830, 834 (1986).

▇▇▇ "Pennsylvania has thus far escaped the widescale turbulence so common to the field and still clings to the at-will presumption." *Id.* The *sine qua non* of the presumption is that except in rare instances, discharges will not be reviewed in a judicial forum. The presumption may be overcome by express contract, implied in-fact contract (that is, the surrounding circumstances of the hiring may indicate that the parties did not intend it to be at-will), and additional consideration passing from the employee to the employer (that is, if the employee bestows a legally sufficient benefit or incurs a sufficient detriment for the benefit of the employer beyond the services for which he was hired, a court may infer that the parties intended to overcome the at-will presumption). An employer has no right to discharge even an at-will employee if the firing would contravene a clear public policy or if it is effected with the specific intent to harm the employee. A dismissal which is improper for either reason may be remedied by a tort action in wrongful discharge. *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986). Several recent decisions have noted that any further erosion of the at-will presumption in Pennsylvania should be effected by the legislature, not the courts. *Darlington v. General Electric, supra; Martin v. Capital Cities Media, Inc., supra;* and *Veno v. Meredith, supra.*

▇▇▇ Appellant argues that the trial court erred in granting summary judgment as there was evidence raising a material question of fact that she had entered into a lifetime or permanent employment relationship. In support of this, she points to her deposition where she testified that upon being hired, her manager told her that she "could have a permanent job and there was a lot of overtime." N.T., 10/17/86, at 15. She also points to the fact that an employee handbook was delivered to her advising that she would achieve permanent employment status after the successful completion of a ninety day probationary period [1] and

1. The handbook states: "Prompt regular attendance, knowledge and performance of your job and working in a safe and efficient manner,

also listing various offenses which could be cause for termination. She further cites an agreement she executed when she was hired which states, among other things, that the employer would have all rights to any inventions or improvements she might make or conceive and that she would not divulge the employer's confidential information.

We find no merit to this contention. We shall examine each of the factors asserted by appellant. The promise of "permanent" employment alone is too broad to be enforced. Pennsylvania appellate decisions have invariably evinced a marked reluctance to enforce employment contracts "for life" or of similar breadth. Recent cases holding that such promises do not overcome the at-will presumption include: *Ross v. Montour Railroad Co.*, 357 Pa.Super. 376, 516 A.2d 29 (1986) (expectation of "life long" employment alone not sufficient to overcome the at-will rule); *Murphy v. Publicker Industries, Inc.*, 357 Pa.Super. 409, 516 A.2d 47 (1986) (promise of life-time employment is not in itself definite enough to overcome the at-will presumption); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986) (employer's statements to employee, including "I want to retire together," held too broad and vague to overcome the at-will presumption); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986) (employer's statement that employee was hired to work on a "long range project" held too vague and unspecified to overcome the at-will presumption); and *Betts v. Stroehmann Bros.*, 355 Pa.Super. 195, 512 A.2d 1280 (1986) (employee's understanding that employment was to be "long term" insufficient to overcome the at-will presumption). *See also Rogers v. International Business Machines Corp.*, 500 F.Supp. 867 (W.D.Pa.1980); *Moorhouse v. Boeing Company*, 501 F.Supp. 390 (E.D.Pa. 1980); *Green v. Medford Knitwear Mills, Inc.*, 408 F.Supp. 577 (E.D.Pa.1976).

while keeping your work area clean, are examples of the factors your supervisor will evaluate before approving you to become a permanent employee." Handbook at II–3.

■ Appellant also points to a portion of the employee . handbook given to her when she commenced her employment, which she contends contained a "just cause" provision precluding the employer from discharging her at-will. The handbook contains a provision in the "Standards of Behavior and Conduct" section which states that violation of certain enumerated offenses "can result in *immediate* suspension or termination." (Emphasis in original.) Included in the list are the following: "Fighting, horseplay, intoxication, gambling, and disorderly, immoral or unlawful conduct on Company property."

■ We find no merit to the contention that the handbook contains either expressly or by clear implication a just cause provision. The status of the contractual enforceability of employee handbooks has recently been clarified in several appellate decisions. A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule. *See Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986); *Reilly v. Stroehmann Bros. Co.*, 367 Pa.Super. 411, 532 A.2d 1212 (1987); *DiBonaventura v. Consolidated Rail Corporation*, 372 Pa.Super. 420, 539 A.2d 865 (1988). *But See Richardson v. Charles Cole Memorial Hospital*, 320 Pa.Super. 106, 466 A.2d 1084 (1983) and *Muscarella v. Milton Shoe Manufacturing Company, Inc.*, 352 Pa.Super. 158, 507 A.2d 430 (1986), which found handbooks and personnel policies unenforceable due to the fact that they are not bargained for by the employee but are unilaterally distributed by the employer. The absence of a bargained-for exchange was deemed to preclude their enforceability. The more recent decisions, *see Martin v. Capital Cities Media Inc., supra, et al.,* do not find the lack of a bargained-for exchange a bar to enforcing handbooks against employers. Since these decisions represent the most recent ˙ trend of our court in this evolving area, we will analyze the instant handbook by reference to the standard enunciated in them.

The instant handbook contains numerous provisions covering all manner of work-related information. The company's history is detailed along with numerous statements of company policy. Compensation is discussed as are benefits, holidays, vacations, and health and safety rules. The handbook states that engaging in certain offenses "can" result in termination, suggesting that discretion is left to the employer as to whether the ultimate sanction of discharge should be applied in a given instance. This discretion is completely at odds with any notion that the provision in question should be read to mean that an employee could not be discharged except for objective just cause. We stated in *Martin v. Capital Cities Media, Inc., supra* 354 Pa.Super. at 214, 511 A.2d at 838:

> The handbook in the instant case does not evidence an intent to convert the employees who received it into employees who could only be discharged for an objective "just cause." The list of actions that call for disciplinary action set forth in the handbook, *supra,* are nothing more than common sense enumerations of actions that any reasonable at-will employee would understand to generally call for disciplinary action. The handbook is an aspirational statement by the employer listing actions that generally will not be tolerated; it serves an information function....

> Appellant had been hired as an at-will employee. To now hold that the handbook allowed her discharge only for just cause would, in effect, convert her into an employee with a contract for an indefinite term who could be fired only for objective just cause. This would be a modification of immense proportions. For such an extreme modification of a preexisting contract, we would require a clear statement of an intent to so modify. We do not believe a reasonable person in the appellant's position would have read this handbook provision as converting her from an at-will employee to an employee with an indefinite contract who could never be discharged without objective just cause.... The handbook provision [citing actions which represent cause for disciplinary ac-

tion] uses very general language such as "dishonesty", "insubordination", "conduct which will reflect unfavorably on the Times Leader." The reasonable employee would understand these terms to include the phrase '... in the judgment of the employer.' The intent to overcome the at-will presumption must be stated with clarity.

This rationale is applicable instantly. The handbook does not contain a clear indication that the employer intended to overcome the at-will presumption. As in *Martin*, the actions which the handbook states "can" result in termination appear to be nothing more than common-sense enumerations of actions that any at-will employee would understand to call for disciplinary action. A reasonable employee would understand the provision in question to mean that the employer, in his subjective judgment, is free to decide whether a discharge would be appropriate. Appellant is entitled to no relief on the basis of this handbook provision. Appellant asserts, however, that the employer truly intended that those who satisfactorily completed the probationary period, as appellant did, would have "permanent" employment status which could not be terminated absent just cause.

This assertion is without merit. The employee handbook provision discussing the satisfactory completion of the probationary term (set forth in footnote one, *supra*), in no way suggests that once an employee achieves "permanent" status, she could never be fired except for objective just cause. To so hold would contravene the settled principle that great clarity is necessary to contract away the at-will presumption. *Clay v. Advanced Computer Applications*, 370 Pa.Super. 497, 536 A.2d 1375 (1988) (*en banc*); *Martin v. Capital Cities Media, Inc., supra*. We fail to see the requisite clarity in the probationary provision of the instant handbook. Appellant also argues that the written agreement whereby she gave the employer the rights to any inventions or improvements she might make or conceive and agreed not to divulge any of the employer's secrets

constitutes additional consideration sufficient to overcome the at-will presumption.

We disagree. Additional consideration has been described as follows:

Since at least 1946, Pennsylvania courts have recognized that even contracts for an indefinite duration can be brought out of the at-will presumption by a showing that the employee gave his employer additional consideration *other* than the services for which he was hired. *See Lucacher v. Kerson,* [158 Pa.Super. 437, 45 A.2d 245 (1946)]. The term "consideration" is not used here as it is in the usual contractual context to signify a *validation* device. The term is used, rather, more as an *interpretation* device. When "sufficient additional consideration" is present, courts infer that the parties *intended* that the contract will not be terminable at-will. This inference may be nothing more than a legal fiction because it is possible that in a given case, the parties never truly contemplated how long the employment would last even though additional consideration is present. Even so, the at-will presumption would be overcome. On the other hand, if the parties specifically agreed that the employment would be *at-will,* even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will.

. . . .

Thus, a court will find 'additional consideration' when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. 'If the circumstances are such that a termination of the relation by one party will result in great hardship or loss to the other, as they must have known it would when they made the contract, this is a factor of great weight in inducing a holding that the parties agreed

upon a specific period.' 3 A. Corbin, *Corbin on Contracts* § 684 (1960).

*Darlington v. General Electric, supra* 350 Pa.Super. at 201 and 202, 504 A.2d at 314 and 315.

> When sufficient additional consideration is present, an employee should not be subject to discharge without just cause for a reasonable time.... The length of time during which it would be unreasonable to terminate, without just cause, an employee who has given additional consideration should be commensurate with the hardship the employee has endured or the benefit he has bestowed.

*Veno v. Meredith, supra* 357 Pa.Super. at 102, 515 A.2d at 580.

Instantly, there is no indication that appellant brought any abilities to the job, aside from the services for which she was compensated, which were beneficial to her employer or that she sacrificed anything tangible pursuant to the agreement beyond that for which she was paid. The at-will presumption is not overcome every time a worker sacrifices theoretical rights and privileges. The present agreement was based on a mere possibility that appellant would conceive something of value. We have no indication that she did conceive anything of value during her employment, or that at the time she was hired it was reasonably likely she would. The privileges and rights which appellant sacrificed were so minimal that in no sense can we say the agreement rose to the level of "additional consideration" as our courts have defined it.

None of the factors cited by appellant, either individually or in combination, is sufficient to overcome the at-will presumption. Appellant cites *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (1987), in support of her argument that the promise of permanent employment in combination with the handbook provisions, the successful completion of the probationary period, and the alleged additional consideration indicate that she and the employer truly

intended that she have "permanent" employment. *Greene* does not compel this holding. In *Greene,* the plaintiff was hired as a plasterer in a Pittsburgh office building in 1959. At that time, he agreed to work for less than union scale in exchange for a contract of employment for life. In 1983, without warning, he was discharged. The plaintiff sued, alleging that his contract of life-time employment precluded his discharge. The trial court granted the employer's motion for summary judgment. On appeal, we reversed, concluding that although a promise of life-time employment should not be enforced merely on the basis of the promise itself, such a promise *should be* enforced if the surrounding circumstances indicate that the parties truly intended to overcome the presumption of at-will employment or if there were additional consideration present. We left this determination for a jury.

By recognizing that the surrounding circumstances of the hiring should be examined to discern the terms of the employment relation, *Greene* merely reaffirmed Pennsylvania's long-standing acceptance of the principle that the at-will presumption may be overcome by evidence of an implied in-fact contract. This theory of recovery was given a thorough exposition in *Darlington v. General Electric, supra.* There need not be additional consideration present to enforce a valid implied in-fact contract. *Id. See also Veno v. Meredith, supra.* Like additional consideration, the implied in-fact theory of recovery is an intention-discerning mechanism. A court will examine numerous factors surrounding the hiring to determine whether a reasonable person in the employee's situation would understand that his employment status is at-will. We properly stated in *Greene,* which was not a decision of the court *en banc,* that we did not view our holding as changing the law, but noted that it was an attempt to summarize and synthesize existing principles of employment contract jurisprudence.

The instant case is clearly distinguishable. Appellant cites no evidence that in agreeing to work for Extracorpore-

al, she sacrificed anything nearly of the magnitude that the plaintiff in *Greene* bestowed on his employer. Unlike the plaintiff in *Greene,* appellant posits nothing beyond the naked assertion that she was promised "permanent" employment. As we have discussed, she fails to cite sufficient additional consideration or other surrounding circumstances which might lend validity to her claim. Likewise, the employee handbook given to her is insufficient to alter her at-will status.

We do not read *Greene* to stand for the proposition that any time a discharged employee talismanically recites that he was promised "permanent" employment, the case must automatically proceed to trial. It is elementary that the employee must first present averments which would raise a legally sufficient factual dispute. Recent decisions have held it proper in similar instances for *the court* to examine the factual averments and decide that the surrounding circumstances and additional consideration do not sufficiently manifest an intent to overcome the at-will presumption. *See Darlington v. General Electric, supra; Ross v. Montour Railroad Co., supra; Betts v. Stroehmann Bros., supra; Veno v. Meredith, supra.*

Whether a particular employment contract is terminable-at-will is a question of interpretation.

'The question of interpretation of language and conduct—the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law.'

. . . .

'We must bear in mind, however that *this question of fact is like other questions of fact in this: it may be a question that should be answered by the judge rather than by the jury.*

'[If] *the evidence is so clear no reasonable man would determine the issue before the court in any way but one, the court will itself determine the issue.'*

3 A. Corbin, *Corbin on Contracts* (1960). (Emphasis added.) If the evidence is 'so clear ... a jury's verdict to the contrary would be set aside.' *Id.*

*Darlington v. General Electric, supra* 350 Pa.Super. at 195, 504 A.2d at 312. Interpreting the facts of the instant case in appellant's favor, we find an insufficient factual basis upon which to remand this case for trial.[2]

██ Scott next contends that her discharge violated a public policy which protects employees who exercise self-defense. She asserts that even if she struck Ms. Adaey during the disturbance, she acted in self-defense. The policy forbidding discharges of those acting in self-defense,

---

**2.** *Marsh v. Boyle,* 366 Pa.Super. 1, 3–7, 530 A.2d 491, 493–94 (1987), is also distinguishable. There, we wrote:

> Appellant left his employment as circulation manager of the Lewistown Sentinel to begin working at an increased salary for Appellees as publisher of the Clarion News. It was Appellant's understanding that he would be working for a period of time along with the current publisher, who was about to retire. The date of the current publisher's retirement was never established. Appellant was informed at the time of hiring that he would work in Clarion as publisher for 'at least two years' and thereafter would become general manager in Oil City, a position Appellant desired because it would result in a pay increase and because Oil City was Appellant's childhood home. Appellant placed his house in Lewistown for sale and relocated to Clarion to commence his employment on October 28, 1985. Appellant's family remained in Lewistown and his home there was not sold prior to his dismissal at the Clarion News on January 29, 1986.
>
> . . . .
>
> In the case before us, the employer's assurances that Appellant would be working as publisher "for at least two years" was not sufficiently definite to take the agreement out of the at-will employment presumption. Appellant, nevertheless, relies on the surrounding circumstances, particularly his resignation from his position with the Lewistown paper, his move to Clarion and his act of placing his house on the market as establishing sufficient consideration to rebut the at-will presumption. Appellant seeks to prove that the parties' discussion as to the terms of his employment, when examined in light of these circumstances, created a contract which could not be terminated at-will but, rather, would continue for a reasonable length of time, or at least two years.

We concluded that the issue was not one appropriately resolved by summary judgment. Again, the plaintiff in *Marsh* presented far more substantial evidence to rebut the at-will presumption than appellant presents instantly. *Marsh* noted that a promise of "permanent" employment standing alone will not overcome the at-will presumption.

she argues, is articulated in 18 Pa.C.S. § 505, which states in pertinent part:

The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

We find no merit to this assertion. The "wrongful discharge" cause of action had its Pennsylvania genesis in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). George Geary, a tubular products salesman for U.S. Steel, voiced misgivings to his superiors about the safety of a particular new product. Although the product was subsequently reevaluated and withdrawn due to his efforts, Geary was summarily discharged. He filed suit alleging wrongful discharge, and U.S. Steel's demurrer was sustained. On appeal, our supreme court affirmed, concluding that "Geary had made a nuisance of himself," and "[t]he praiseworthiness of Geary's motives does not detract from the company's legitimate interest in preserving its normal operational procedures from disruption." *Id.* 456 Pa. at 180 and 183, 319 A.2d at 178 and 180. The court wrote: "It may be granted that there may be areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened." But, "when the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id.* 456 Pa. at 184 and 185, 319 A.2d at 180.

■ Subsequent to *Geary's* suggestion that certain discharged employees may successfully assert a "public policy" cause of action, our courts have consistently held that

an employee may recover for a wrongful discharge cause of action if the discharge in some way contravenes public policy or is made with the specific intent to harm. However, if an important public policy is implicated, a discharged employee will not recover if the employer has a separate, plausible, and legitimate business reason for the firing. *See e.g., Reuther v. Fowler & Williams*, 255 Pa.Super. 25, 386 A.2d 119 (1978). There is some authority that a balancing test should be employed: "Some public policies are of greater importance than others. It follows that the more important the public policy implicated by the discharge, the harder will it be to assert a sufficient separate and legitimate business reason to justify the discharge." *Veno v. Meredith*, 357 Pa.Super. 85, 104, 515 A.2d 571, 581 (1986).

█ The *Geary* court expressly declined to "define in comprehensive fashion the parameters" of the employer's privilege to discharge at will. Since then, acting on a case-by-case basis, our courts have carved very narrow exceptions to the at-will rule. It is generally accepted that to be actionable, the asserted public policy must be one which is already articulated in law or a constitutional provision. *See Darlington v. General Electric, supra.* It is clear that discharges which are merely arbitrary do not contravene public policy. *See Marsh v. Boyle*, 366 Pa.Super. 1, 530 A.2d 491 (1987); *Betts v. Stroehmann Bros.*, 355 Pa.Super. 195, 512 A.2d 1280 (1986).

Our state appellate courts have found a plausible wrongful discharge cause of action in only limited instances. In *Reuther v. Fowler & Williams*, 255 Pa.Super. 28, 386 A.2d 119 (1978), we held that a discharge motivated by an employee's service of jury duty is improper. We noted that jury service is of "the highest importance to our judicial process," but opined that even this public policy could be overcome by a separate, plausible and legitimate reason supporting it. In *Hunter v. Port Authority of Allegheny*

*County*, 277 Pa.Super. 4, 419 A.2d 631 (1980), a public bus company refused to hire appellant (a situation we deemed similar to a discharge) due to his prior convictions for aggravated assault and battery, despite the fact that the Governor had granted him an unconditional pardon for the offenses. We reversed a demurrer in the bus company's favor, holding that there was an important public policy in preventing the unwarranted stigmatization of, and unreasonable restrictions upon, former offenders. We found it significant that the employer was a government entity. Another example of a violation of a clear public policy is where a discharge is motivated by an employee's refusal to take a polygraph test. *Leibowitz v. H.A. Winston*, 342 Pa.Super. 456, 493 A.2d 111 (1985).

In the instant case, appellant was discharged due to Extracorporeal's belief that she was involved in a fight on company premises. This discharge lies beyond our power to remedy. Our courts generally hold that the discharge of an employee who is believed by the employer, broadly speaking, to be disruptive, is beyond the pale of judicial review. *See Geary v. United States Steel, supra* (no cause of action for employee discharged after bypassing usual channels to complain about a new product's safety; the court found he had "made a nuisance of himself"); *Rinehimer v. Luzerne Com. College*, 372 Pa.Super. 420, 539 A.2d 1298 (1988) (college's board of directors was free to fire president whose policies caused a "major upheaval" and "a great deal of internal unrest"); *Martin v. Capital Cities Media, Inc., supra*, (no cause of action for newspaper employee discharged after she placed an advertisement in a competing newspaper as employer had the right to fire one it deemed insubordinate and disruptive); *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980) (no cause of action for fired employee who, among other things, displayed difficult and disruptive behavior); *Turner v. Letterkenny Federal Credit Union*, 351 Pa.Super. 51, 505 A.2d 259 (1985) (no cause of action for employee fired after

he had experienced deteriorating relations with those under his supervision); and *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985) (no cause of action for employee fired after continuously complaining to his supervisors about the financially wasteful manner in which his department was run; "troublesome" employee may be discharged at will).

Turning to the instant case, we find no public policy implicated by the discharge. Given the procedural posture of this case, we must believe that during the disturbance with Ms. Adaey, appellant either acted in self-defense or never landed a blow. Nevertheless, it is clear that the employer held her at least partially accountable for the disturbance. We may not deny the employer the right to dismiss due to its subjective evaluation that the employee behaved disruptively. *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986); The moral fairness of the firing is simply beyond our power to review. *See e.g., Gillespie v. St. Joseph University*, 355 Pa.Super. 362, 513 A.2d 471 (1986); *Darlington v. General Electric, supra.* We surely do not condone discharges which are by any objective measure unfair; however, in the context of the facts of this case, the public policy asserted by appellant—the right to exercise self-defense—strikes entirely too near the employer's legitimate interest in discharging employees it perceives to be disruptive. To reverse on this basis "would have the unwise effect of transferring to the judicial forum the duty of evaluating the propriety of management decisions." *Rossi v. Pennsylvania State University, supra* 340 Pa.Super. at 54, 489 A.2d at 836. This we decline to allow.

Judgment affirmed.