## Luebke v. Erie Press Systems

*James A. Pitonyak,* for plaintiffs.

*Joe C. Ashworth, Josie A. Alexander* and *Stephen A. Tetuan,* for defendant.

LEVIN, *J.,* August 2, 1989 — This matter comes before the court on defendant Erie Press Systems' motion for summary judgment. In the winter of 1987, plaintiff, Gordon Luebke, was arrested by the police in Erie, Pennsylvania, on criminal charges of indecent assault and corruption of a minor. Later, on April 27, 1988, Luebke pled guilty to the criminal charges. Plaintiff had committed these crimes while employed by Erie Press Systems. Consequently, on

June 17, 1988, Luebke was sentenced to 11 and one-half months of incarceration and three years of probation. At the time of the sentencing, work release was approved for plaintiff. Because Mr. Luebke had not made the necessary arrangements to enable him to participate in the work-release program, he was incarcerated.

Erie Press claims it first became aware that Luebke had been engaging in and convicted of the crimes of indecent assault and corruption of a minor when Luebke's sentencing was published in the local newspaper, the *Erie Morning News,* on June 18, 1988. On the other hand, plaintiff claims that before his plea he had consulted with Mr. John Torrelli, his supervisor at Erie Press Systems, and had advised Mr. Torrelli of the possibility that he might be incarcerated. Further, plaintiff avers that Mr. Torrelli stated there would be no problem with plaintiff continuing his employment with Erie Press Systems through the work release program, if it would be available to Mr. Luebke. In addition, plaintiff alleges he was told by Mr. Torrelli that he would be permitted to take a leave of absence, so that he would continue to be employed by Erie Press Systems.

According to plaintiff, shortly after he was bound over to district court, he advised John Torrelli that criminal charges had been brought against him. Plaintiff again contacted Torrelli in early April 1987, prior to his plea. On this occasion, plaintiff alleges that Torrelli assurred him that continuation of employment at Erie Press would not be a problem in the event that plaintiff chose to plead guilty to the charges.

On June 19, 1987, Erie Press Company sent a letter to Mr. Luebke in prison informing him that Erie Press had terminated his employment. Defen-

dant states that Mr. Luebke was discharged because he violated work rule no. 27, which is set forth as follows:

"The listing below covers common rules of conduct. The disciplinary sanctions listed below will be imposed unless extenuating circumstances are shown to exist.

*"Penalties for Violations"*

| *"Nature of Rule Violation* | *First [Offense]* |
|---|---|
| "(27) Immoral conduct or indecency | Termination" |

At the time of filing the motion for amendment, the statute of limitations had not yet passed. In addition, the discovery was still being carried out. However, plaintiff had been deposed previously without defendant having benefit of the amended pleading.

Pennsylvania Rule of Civil Procedure 1035(b) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Plaintiff alleges a series of arguments which the court will discuss seriatim.

The threshold issue before the court is whether plaintiff should be permitted to amend his pleadings. It has been held that a right to amend pleadings exists up to the time of trial unless prejudice would result to the adverse party. *West Penn Power Co. v. Bethlehem Steel Corp.*, 236 Pa. Super. 413, 348 A.2d 144 (1975). Amendments are liberally granted in Pennsylvania, Pa.R.C.P. 1033. In the instant case, since the statute of limitations had not yet passed, no prejudice would result to defendant

in allowing plaintiff to amend other than possible costs which would be incurred by further discovery depositions of the parties which may not have been necessary if the request for amendment had not been filed. This, since it can be corrected,[*] is not sufficient prejudice to prevent this court from allowing an amendment. Further, Pennsylvania is a fact-pleading state. Thus parties need not plead legal theories. Plaintiff's original complaint contained facts which pointed to a theory of reliance/estoppel. Merely allowing plaintiff to plead representations made by defendant which were impliedly or indirectly set forth in previous pleadings in no way surprises or prejudices defendant in this case. Therefore, plaintiff will be permitted to amend the complaint.

The next issue involves a dispute between the parties as to the proper interpretation of defendant's work rule no. 27, cited above. Specifically, the question is whether the rule applies only during working hours or to the employee's conduct both on and off the job. A plain reading of the rule shows that it applies to the employee's conduct at all times. The lack of any limiting statement to the contrary in the work rules is determinative.

Another question is what constitutes "immoral conduct or indecency." The term is not defined in defendant's work rules. This is not a factual issue to be decided by jury, as plaintiff argues. Rather, the facts speak for themselves. It is established in this case that plaintiff pled guilty to the crimes of indecent assault and corruption of a minor. The court need not look to the entire universe to determine what is included in the term "immoral con-

---

[*] This is corrected later in the opinion by ordering plaintiff to pay certain costs of further depositions.

duct." It can, however, be sure that the crimes to which plaintiff pled guilty do fall within a portion of the whole category of "immoral conduct." Further, the court need not mince words in pointing out that plaintiff pled guilty to *"indecent* assault" and his termination from employment was based on "immoral conduct or *indecency."*

The court notes that plaintiff was initially hired as an at-will employee. Consequently, under Pennsylvania law, defendant employer has a right to discharge an at-will employee for any or no reason. *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 90, 545 A.2d 334 (1988). However, the discharge cannot contravene a clear public policy or be effected with the specific intent to harm the employee. *Veno v. Meredith,* 357 Pa. Super. 85, 515 A.2d 571 (1986); *Scott v. Extracorporeal Inc., supra.* These two exceptions are the only ones that the courts will allow. The exceptions have no application to the instant case. Any further erosion of the at-will presumption in Pennsylvania should be effected by the legislature, not the courts. *Darlington v. General Electric,* 350 Pa. Super. 183, 504 A.2d 306 (1986).

Also presented is whether defendant violated a public policy of the state of Pennsylvania when it discharged Luebke. Pennsylvania's public policy relative to criminal offenders is as follows:

"We are also mindful that such a result runs afoul of the deeply ingrained public policy of the state to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders. This state in recent years has been unalterably committed to rehabilitation of those persons who have been convicted of criminal offenses. To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of a concept of forgiveness for prior

errant behavior and adds yet another stumbling block along the difficult road of rehabilitation." *Secretary of Revenue v. John's Vending Corporation,* 453 Pa. 488, 494-5, 309 A.2d 358, 362 (1973).

The court in the *John's Vending Corporation* case based its decision on the fact that the defendant's convictions were for violations which would be considered "immoral behavior" under a state licensing statute. However, those convictions dated almost 20 years prior to the licensing dispute in that case. The court in *John's Vending Corporation* noted that the defendant's convictions were so long ago that they were of little value in predicting future conduct of their perpetrator.

"Where . . . nearly 20 years has expired since the convictions and the record reveals that the individual has held this position of responsibility for 12 years without any allegation of impropriety, it is ludicrous to contend that these prior acts provide any basis to evaluate his present character." *Id.* at 494, 309 A.2d at 362.

In the instant case, plaintiff was very recently convicted of criminal charges.

The full panoply of rights incident to a criminal defendant was afforded plaintiff prior to this criminal conviction. As stated by our Superior Court, the right to be presumed innocent until proven guilty, and the other rights ensured by both the U.S. and Pennsylvania constitutions, cannot necessarily be superimposed into an accused's remaining life experiences. Thus, jobs are lost when the employer, for business reasons, terminates an employee accused of a crime which is a plausible and legitimate reason for plaintiff's discharge and does not constitute a violation of the State of Pennsylvania's public policy. *Cisco v. United Parcel Services Inc.,* 328 Pa. Super. 300, 308, 476 A.2d 1340, 1344 (1984).

In the instant case, plaintiff pled guilty to and was convicted of the charges. Defendant may have terminated plaintiff out of fear for defendant's public image and worker morale. The court finds the Erie Press Co. had a plausible and legitimate reason for terminating plaintiff's employment. This court finds that there was not a violation of the State of Pennsylvania's public policy. *Id.* at 308, 476 A.2d at 1344.

In count III of his complaint, plaintiff has alleged that not only did defendant's termination of him breach a contract that he had with Erie Press, it also violated his rights under the due process clauses of both the Pennsylvania and U.S. constitutions (Pa. Constitution, Art. I, §1; U.S. Constitution, Fifth and Fourteenth amendments).

Plaintiff alleges that his rights to due process were infringed by only being told that he violated work rule no. 27. He argues that due process requires that he be granted some form of notice of the charges against him, a hearing on those charges, and the right to be heard on the charges. Plaintiff was an at-will employee. As discussed above, it is an established legal principle that an employee-at-will may be dismissed "for any or no reason." *Veno v. Meredith,* 357 Pa. Super. 85, 515 A.2d 571 (1986); *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 90, 545 A.2d 334 (1988). If there is no contract limiting the employer's right to discharge at will, the reason for the discharge is not subject to review in a judicial forum. This non-reviewability (except for public policy violations and where there is specific intent to harm) is the sine qua non of the at-will relationship. *Veno v. Meredith,* 357 Pa. Super. 85, 15 A.2d 571 (1986).

Furthermore, plaintiff pled guilty to and was convicted of the very same offenses which caused him to be discharged by his employer, Erie Press

Company. Plaintiff's right to due process was upheld by his appearance in court. No disciplinary hearing by the company is required where plaintiff's violation of the work rule is established by a court verdict. In other words, the same right to due process existed in both situations. The fulfillment of due process rights in the criminal case satisfied those in the discharge circumstances.

Plaintiff also argues that defendant's termination of his employment constituted intentional infliction of emotional distress. A claim for emotional distress brought by plaintiff would only succeed if it is shown that the defendant's actions were outrageous. *Clay v. Advance Computer Applications,* 370 Pa. Super. 497, 536 A.2d 1375 (1988). However, the court does not find that there has been conduct that is so outrageous in character, and so extensive in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized community. *Clay, supra.*

The only questions remaining are (1) whether an oral contract existed by virtue of plaintiff's guilty plea which allegedly amended work rule no. 27; and (2) whether this is a case of detrimental reliance.

Consideration is a key element in the creation of a contract. Any detriment is sufficient consideration to support a contract. A promisee who has suffered detriment, however slight, or has done what he was not otherwise bound to do in return for a promise has given consideration. *This is so regardless of whether the promisor has benefited. Pittsburgh Stove and Range Company v. Pennsylvania Stove Company,* 208 Pa. 37, 57 Atl. 77 (1904). When there was a promise which the promisor should reasonably expect to induce action on the part of the promisee, and which does induce such action, it is binding if injustice can be avoided only by enforce-

ment of the promise. This is a question of fact, not law. *Havas v. Temple University of Com. System of Higher Education,* 357 Pa. Super. 353, 516 A.2d 17 (1986).

In the instant case, defendant did not receive any benefit by making the purported promise of continued employment to plaintiff. However, plaintiff may have in fact acted in reliance on the alleged promise when he entered a guilty plea. This could be a factual question. Further, there is question that surrender of the right to trial by jury can constitute sufficient detriment in terms of consideration. This would be particularly true if plaintiff had a legal defense to the criminal charge but gave up that defense based on defendant's promises. If such were the case, a jury could find that injustice was imposed on him by defendant. The discrepancies between plaintiff's and defendant's version of events in this case create material issues of fact for a jury to determine, regarding oral contract and detrimental reliance theories.

Because there remain material questions of fact as to plaintiff's claim of existence of an alleged oral contract and detrimental reliance, defendant's motion for summary judgment is denied. However, plaintiff's due process, public policy violation, and emotional distress claims are improper and are hereby dismissed. In addition, plaintiff is granted leave to amend the complaint within 30 days after this opinion/order is filed. Finally, since defendant will now be forced to take additional depositions which might not have been necessary had they known of the theories of plaintiff at the time of the original deposition, the court feels defendant's attorney fees incurred by virtue of the depositions are proper. Hence, the court will award attorney fees to defendant to be paid by plaintiff in the amount of

$400 plus one-half the cost of the court reporter in the event depositions are scheduled.

## ORDER

And now, August 2, 1989, it is hereby ordered, adjudged and decreed as follows:

(1) Plaintiff shall be allowed to file an amended pleading within 30 days, subject to the terms and limitations of the order hereinafter entered in the disposition of the summary judgment motion, without prejudice to defendant to file responsive pleadings thereto.

(2) Defendant's motion for summary judgment is granted only to the extent that there is no claim for intentional infliction of emotional distress, no violation of plaintiff's due process rights, and no public policy of the Commonwealth of Pennsylvania was infringed upon by the defendant's action. However, as to the other allegations of the amended complaint, the court denies the request for summary judgment.

(3) The court hereby awards attorney fees to defendant to be paid by plaintiff for the cost of supplemental depositions in the amount of $400 plus one-half the cost of the court reporter if in fact depositions are taken, for the reasons set forth in the opinion.