**Jay SHARP, Plaintiff,**

v.

**BW/IP INTERNATIONAL, INC.,
t/a BW/IP, Defendant.**

**No. Civ. A. 96–5514.**

United States District Court,
E.D. Pennsylvania.

Jan. 8, 1998.

Leo A. Hackett, Fronefield and deFuria, Media, PA, for Plaintiff.

Thomas J. Barton, Renee Narducci Battisti, Drinker, Biddle & Reath, Philadelphia, PA, for Defendant.

**MEMORANDUM**

JOYNER, District Judge.

Plaintiff, Jay Sharp, ("Sharp" or "Plaintiff") alleges in this action that defendant, BW/IP International ("BW/IP" or "Defendant") discharged him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et. seq.;* terminated him to prevent him from vesting in defendant's pension plan in violation of § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; and breached an implied-in-fact employment contract for which plaintiff claims damages under the Pennsylvania Wage Payment and Collection Act ("PWPCA") 43 P.S. § 260.1, *et. seq.* Jurisdiction is proper under 28 U.S.C. § 1331, and supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367.

Presently before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on all counts of Plaintiff's Complaint. For the following reasons the Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff was employed by BW/IP as a salesman on December 18, 1989. BW/IP is a corporation located in Boothwyn, Pennsylvania that manufactures and services industrial pumps and seals used by utility companies, oil refineries, and other industrial enterprises. Plaintiff had fifteen (15) years of experience in this field when he was hired by defendant. Plaintiff alleges that he was hired, in part, to bring defendant access to new customers and geographic areas which defendant serviced in his prior employment.

During the course of plaintiff's employment with BW/IP, plaintiff's performance evaluations were satisfactory. In June 1993, however, plaintiff received a "marginal" performance evaluation purportedly as a result of plaintiff's failure to meet his goals in booking repairs into defendant's repair center. After receiving this "marginal" review for the first two quarters of 1993, plaintiff improved

his repair bookings and received an "acceptable" performance review in March of 1994. However, plaintiff was terminated on August 12, 1994. Plaintiff was 58 years old when he was terminated and alleges that the only other salesman terminated at that time was Ben Tobin, who was also in his fifties.

In October 1993, approximately nine months prior to plaintiff's termination, defendant employed a new sales person, Larry Bohn ("Bohn"), in the Boothwyn, Pennsylvania office. Bohn was approximately 41 years of age. This salesman also had a difficult time meeting his repair quotas for the repair center. In fact, Bohn received two warnings about the quality of his work within the first 4–5 months of working for defendant. Bohn first received a poor performance review approximately 30 days prior to termination of his 90 day probationary period, and Bohn's second poor performance review, received in March 1994, was accompanied by a threat that he would likely be terminated if he did not increase his repair bookings. However, Bohn was kept on even after receiving these poor performance reviews. Even when Bohn continued to perform inadequately in outside sales, he was still not terminated. Instead, defendant created a new in-house position for him, allowing Bohn to continue his employment with defendant.

Further, when plaintiff was terminated his clients were transferred to this new salesman, Bohn, and another salesman who was in his thirties. The customers brought to defendant by plaintiff were similarly transferred to younger sales people during the course of plaintiff's employment.[1]

Plaintiff further alleges that BW/IP was the Administrator of the BW/IP International, Inc. Capital Accumulation Plan ("the Pension Plan"). Defendant's pension plan provided for vesting after five years of employment. Plaintiff participated in the plan, but was terminated approximately four months prior to vesting. Plaintiff requested that defendant extend his employment until December 18, 1994 in order to allow him to vest, but defendant denied plaintiff's re-

quest. Plaintiff alleges that his termination was effectuated to prevent him from vesting in the pension plan.

Finally, plaintiff alleges that there was an implied-in-fact employment contract between plaintiff and defendant. Plaintiff alleges that his immediate supervisor, Michael Dziekonski ("Dziekonski"), continually requested that plaintiff relocate from Clayton, New Jersey to a location closer to defendant's facility first in Exton, Pennsylvania and then in Boothwyn, Pennsylvania. In reliance upon this "employment condition," plaintiff spent in excess of twenty-five thousand ($25,000) on improvements to his home to make it saleable and entered into a contract for the sale of his home in July 1994. While the repairs were being conducted on plaintiff's home, plaintiff and his wife looked for a new home near defendant's facility. Plaintiff alleges that defendant knew plaintiff was in the process of negotiating to sell his home to relocate closer to defendant's facility prior to his termination and that defendant did not notify or advise plaintiff during this time of negotiation that his employment was in question. Defendant terminated plaintiff's employment after the sale of plaintiff's home and prior to plaintiff's purchase of another property. As a result of his termination, plaintiff has been unable to purchase a new property since he had no employment and, therefore, has been living in a camper since his termination.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a

---

1. Plaintiff alleges in his complaint that he brought defendant access to several new customers; however, at deposition he was only able to

name one. (Sharp Dep. 2/24/97 at 86 and 4/23/97 at 419).

mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. Application of the Standard to This Case

### A. Age Discrimination

#### 1. Method of Proof in Employment Discrimination Cases

Plaintiff, Jay Sharp's, employment discrimination claim is governed by the burden shifting framework first established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[2] This framework has three steps: (1) plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to defendant, who must offer a legitimate, non-discriminatory reason for the action; and (3) plaintiff may then "demonstrate that the employer's stated reason was not its true reason, but merely a pretext for discrimination." *Brewer v. Quak-*

er State Oil Refining Corp., 72 F.3d 326, 330 (3d Cir.1995).

In *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (1996), the Third Circuit, sitting *en banc,* clarified the evidence required to submit pretext claims to a jury. The court reaffirmed its prior holdings that when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff may defeat summary judgment by "point[ing] to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 1067 (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994)). *See also Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1997 WL 752158 (3d Cir.) (*en banc* ); *Lawrence v. National Westminster Bank of New Jersey,* 98 F.3d 61, 66 (3d Cir.1996); *Brewer,* 72 F.3d at 331. The district court's role is to "determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable fact finder to conclude that the reasons are incredible." *Sheridan,* 100 F.3d at 1072. In doing so, we must not usurp the jury's "traditional function of assessing the weight of the evidence, the credibility of the witnesses through observation of both direct testimony and cross-examination at trial, and the strength of the inferences that can be drawn from the elements of the prima facie case and the evidence that undermines the employer's proffered reasons for its actions." *Id.*

#### 2. Age Discrimination in Employment Act ("ADEA")

Plaintiff alleges that BW/IP violated the ADEA by terminating him due to his age. To state a prima facie case under the ADEA, a plaintiff must establish that he (1) is over the age of forty (40); (2) is qualified

---

**2.** Plaintiff has not alleged any direct evidence of discriminatory conduct such as derogatory comments or implications concerning his age. In fact, plaintiff made it clear that the only age related comment made to him, calling him a "gray hair," was made in jest and was not made at the time of or near the time of termination. (Sharp Dep. 4/23/97 at 367).

for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of discrimination. *Brewer,* 72 F.3d at 330 (citing *Sempier v. Johnson & Higgins,* 45 F.3d 724, 727 (3d Cir.1995), *cert. denied,* 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995)). Defendant concedes, for purposes of this motion, that plaintiff has established a prima facie case of age discrimination.

■ To establish a legitimate, non-discriminatory reason for terminating plaintiff, defendant proffers the following evidence of plaintiff's poor performance. Defendant points to plaintiff's performance review for January through June 1993 where plaintiff received a marginal overall rating due to his failure to book repairs in the repair center. (Def.'s Mem. at Exhibit G). Defendant also points to Sharp's failure to meet his annual sales and failure to accomplish his other written performance objectives in 1993. (Def.'s Mem. at 7–9). Finally, defendant points to plaintiff's falling below his projected budget for 1994. (Def.'s Mem. at 9). This evidence is sufficient to meet defendant's burden of articulating a legitimate, non-discriminatory reason for plaintiff's termination.

■ In arguing for summary judgment, defendant claims that plaintiff has failed to sustain his second burden to present sufficient evidence to cast doubt on its proffered legitimate, non-discriminatory reasons for termination. The question, then, is whether plaintiff has pointed to "some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Sheridan,* 100 F.3d at 1067 (quoting *Fuentes,* 32 F.3d at 764). It appears that plaintiff has met this burden.

Plaintiff offers a number of facts which cast doubt on defendant's proffered legitimate, non-discriminatory reason. First, plaintiff has submitted evidence that a younger salesmen, Larry Bohn, who had similarly low numbers regarding the number of repairs sent to the repair shop as plaintiff and who received similarly poor performance reviews as plaintiff was not terminated. Bohn, age forty-one (41) was hired by BW/IP in October 1993, approximately nine months prior to plaintiff's termination.[3] In a memorandum dated December 8, 1993, thirty (30) days prior to the termination of Bohn's ninety (90) day probationary period, Bohn was warned by Phil Easton, defendant's regional manager for the petroleum industry, that Bohn had not sufficiently met his goals for the 90 day period. The memo further stated that Bohn had to make progress on meeting the goals in order to have "a successful 90 day probationary period." (Bohn Dep. at Exhibit 7). On March 18, 1994, Bohn received another memorandum from Bob Davidson who was plaintiff's direct supervisor in March 1994. This memorandum referenced a February 22, 1994 meeting wherein Davidson had reported that the input from the lead repair salesmen had been unacceptable. Davidson told Bohn in the memorandum that "I do not see the sense of urgency I would expect from you as a result of my February 22, 1994 comments." (Pl.'s Mem. at Exhibit 8). Davidson further stated that Bohn's "performance as measured by repair orders entered at the Philadelphia service center still remains unacceptable and if improvement in meeting your goal of $130,000 in Philadelphia repairs per quarter is not obtained your employment with BW/IP likely will be terminated in the near future." (Pl.'s Mem. at Exhibit 8).[4] Not only was this younger employee not terminated for his poor performance, rather when Bohn continued to perform poorly in outside sales, defendant created a new in-house position for Bohn so he could continue his employment.[5]

3. Bohn had been previously employed by defendant from approximately November 1976 to November 1986. (Bohn Dep. 3/26/97 at 9).

4. Bohn may ultimately have met his 1994 goals; however, plaintiff alleges this is due, in part, to

the assignment of some of plaintiff's clients to Bohn after plaintiff's termination in August 1994.

5. In January 1995, Bohn was moved to an in-house position. (John Bozzone Dep. 3/26/97 at 43–46). Although defendant considered plaintiff for a similar in-house position, it did not place

To further support his claim that defendant's proffered reason for the termination is a pre-text, plaintiff points to the fact that the only other salesman who was terminated by defendant was also in his fifties. (Pl.'s Mem. at 7). Plaintiff also points to the inconsistency in defendant's reasons for plaintiff's termination. In plaintiff's termination letter, dated August 12, 1994, defendant stated that plaintiff was being terminated due to a "down turn" in business which resulted in a reduction of workforce. (Pl.'s Mem. at Exhibit 4). Defendant did not indicate to plaintiff at the time of his termination that his poor performance was motivating the decision. However, once these proceedings began, the only explanation defendant has offered is plaintiff's performance. While these two explanations may not be mutually exclusive, the inconsistency of the positions aids plaintiff to overcome Defendant's Motion for Summary Judgement. The inconsistency casts doubt on defendant's proffered non-discriminatory reason of plaintiff's performance, particularly considering that Bohn, the younger salesperson, was retained yet had a similarly poor work record.

These facts, taken together and viewed in the light most favorable to plaintiff, create "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in defendant's proffered legitimate, non-discriminatory reason such that a reasonable jury could conclude that the proffered reason is not "worthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, (3d Cir.1997) (*en banc*) (quoting *Fuentes*, 32 F.3d at 764). Therefore, defendant's motion for summary judgment on the ADEA claim is denied.

### 3. *Pennsylvania Human Relations Act ("PHRA")*

■■■ Defendant moves for summary judgment on plaintiff's PHRA claim pursuant to 43 P.S. § 959(h), arguing that plaintiff did not file a complaint with the Pennsylvania

Human Relations Commission ("PHRC") within 180 days of the alleged discriminatory conduct. The pertinent statutory provision provides that "[a]ny complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination...." 43 P.S. § 959(h). The Third Circuit has held that a plaintiff must file an administrative complaint with the PHRC within 180 days of the alleged discrimination in order to maintain an action under the PHRA. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1997). "If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA." *Id.* *See also Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969 (1992); *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989).

Plaintiff acknowledges that he did not file a complaint with the PHRC within 180 days of the alleged discriminatory conduct. (Pl.'s Mem. at 13). However, plaintiff claims that he "filed a claim with the Pennsylvania Human Relations Commission within 300 days and therefore such filing should be sufficient to preserve the Plaintiff's claim under the Pennsylvania Human Relations Act." (Pl.'s Mem. at 13). Although plaintiff's argument is unclear and fails to cite any authority, presumably he is alluding to the 300 day deadline for filing with the Equal Employment Opportunity Commission ("EEOC") when state proceedings have initially been instituted. 42 U.S.C.A. § 2000e–5(e)(1). However, this provision is not relevant to plaintiff's situation, as he is attempting to argue, presumably, that filing with the PHRC in time to meet the EEOC deadline is sufficient to preserve his PHRA claim.[6] This is not so.

As plaintiff has acknowledged that he did not meet the deadline for filing with the PHRC, this Court cannot hear the PHRA claim. Therefore, Defendant's Motion for

---

him in that position or create a new position for him as his supervisor did find him to be as detail oriented as the position allegedly required. This was so even though plaintiff alleges he had more experience than Bohn in this field and had performed a similar function in previous employment. (Sharp Dep. 4/23/97 at 381–90).

**6.** Note also that 42 U.S.C.A. § 2000e–5(e)(1)'s 300 day provision is not applicable to plaintiff as he did not institute proceedings with the PHRA as is required to qualify for the 300 day deadline.

Summary Judgment for the PHRA claim is granted.

## B. ERISA Claim

 Defendant also moves for summary judgment on plaintiff's claim that his termination was effectuated to prevent him from vesting in the pension plan in violation of section 510 of ERISA. 29 U.S.C.A. § 1140. Section 510 of ERISA provides that an employer cannot take action against an employee for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Id.* In order to make out a prima facie case under § 510 of ERISA, "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Continental Can Co.,* 812 F.2d 834, 852 (3d Cir.1987). The employee must show a "specific intent on the part of the employer to interfere with the attainment of pension eligibility." *Hendricks v. Edgewater Steel Co.,* 898 F.2d 385, 389 (3d Cir.1990) (citing *Gavalik,* 812 F.2d at 851–52). That is, the employee must show "that the employer made a *conscious decision* to interfere with the employee's attainment of pension eligibility or additional benefits." *Dewitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 523 (3d Cir.1997) (emphasis added). *See also Armbruster v. Unisys Corp.,* 1993 WL 93975 (E.D.Pa.) *overruled on other grounds Armbruster v. Unisys Corp.,* 32 F.3d 768 (3d Cir.1994) (stating that "[s]ince a loss of benefits is an inevitable consequence of virtually all employment terminations, courts consistently require plaintiff-employees to demonstrate that their employer specifically intended to interfere with their entitlement benefits in reaching disputed personnel decisions."). Although this specific intent can be shown with circumstantial evidence, in *Dewitt,* the Third Circuit recognized that " 'where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad other reasons for which an employer might have dis-

charged him.' " (quoting *Turner v. Schering–Plough Corp.,* 901 F.2d 335, 347 (3d Cir. 1990) (internal citations omitted)).

 Plaintiff contends in his ERISA claim that he participated in BW/IP's pension plan and was terminated to prevent him from vesting. Plaintiff admits in deposition that he bases this contention on the fact that "there was only a few months to go before that vesting and privilege" and on the fact that "it was a surprise to me on the day that I was let go that nothing was said previous." (Sharp Dep. 4/23/97 at 468–69). Plaintiff also points to defendant's failure to allow him to continue working until he vested as support for his claim that defendant violated section 510 of ERISA. Plaintiff alleges nothing further.

This evidence is insufficient to show a specific intent to interfere with plaintiff's benefits or rights under the pension plan. Plaintiff's "evidence" of a specific intent to interfere with his pension benefits amounts to nothing more than an assertion of the fact that he was deprived of the pension benefits as a result of his termination. As stated *supra,* this "inevitable consequence of virtually all employment terminations," standing alone, is insufficient to show a specific intent to interfere with the pension plan under § 510 of ERISA. *Armbruster,* 1993 WL 93975 at *15. Therefore, Defendant's Motion for Summary Judgment is granted on the ERISA claim.

## C. Breach of Implied–in–Fact Employment Contract

 Defendant also seeks summary judgment on plaintiff's breach of an implied-in-fact employment contract claim. In Pennsylvania the "employment-at-will doctrine applies absent a clear intent by the parties to the contrary." *Anderson v. Haverford College,* 851 F.Supp. 179, 181 (E.D.Pa.1994). *See also Carlson v. Arnot–Ogden Memorial Hospital,* 918 F.2d 411, 414 (3d Cir.1990); *Dugan v. Bell Telephone of Pennsylvania,* 876 F.Supp. 713, 726 (W.D.Pa.1994); *Holewinski v. Children's Hospital of Pittsburgh,* 437 Pa.Super. 174, 649 A.2d 712, 715 (1994); *DiBonaventura v. Consolidated Rail Corp.,*

372 Pa.Super. 420, 539 A.2d 865, 867 (1988); *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306, 309 (1986) *overruled on other grounds Krajsa v. Keypunch, Inc.,* 424 Pa.Super. 230, 622 A.2d 355 (1993); *Banas v. Matthews International Corp.,* 348 Pa.Super. 464, 502 A.2d 637, 644 (1985). Under the employment-at-will doctrine, an employee can be discharged at any time "for any or no reason." *Anderson,* 851 F.Supp. at 181. In order to overcome the presumption that the employment is at-will, "there must be either an express contract between the parties, or an implied-in-fact contract plus consideration passing from the employee to the employer from which the court can infer the parties intended to overcome the at-will presumption." *Id.* The burden is on the employee to prove that the parties had an intention to overcome the at-will presumption and to create an employment relationship different than employment-at-will. *DiBonaventura,* 539 A.2d at 867. This is a heavy burden which requires a showing of a "clear statement of an intent to modify." *Id.* at 868; *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571, 578 (1986) ("courts insist that to contract away the at-will presumption, much clarity is required"); *Darlington,* 504 A.2d at 312 ("definiteness is required"). The employee must show that "both parties intended to make a contract." *Holewinski,* 649 A.2d at 715. Further, "if the parties specifically agreed that the employment would be at-will, even though additional consideration were present, we would expect the court to construe the contract according to the parties' stated intention and hold it to be at-will." *Darlington,* 504 A.2d at 314; *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 545 A.2d 334, 339 (1988).

▉▉ Plaintiff alleges that his supervisor, Michael Dziekonski, continually alluded that it would be beneficial to plaintiff's employment and to defendant if plaintiff would move his residence closer to defendant's offices, both when they were in Exton, Pennsylvania and then after they moved to Boothwyn, Pennsylvania. Plaintiff alleges he relied on these intimations in expending over $25,000 to make his, then, current residence in Clayton, New Jersey saleable and also when he entered into an agreement for the sale of this residence. Plaintiff contends that his employer's desire for him to relocate and his consideration in selling his home and attempting to relocate closer to defendant's place of employment created an implied-in-fact employment contract which defendant breached by terminating him.

However, the parties in the instant case specifically agreed that plaintiff's employment would be at-will. Prior to plaintiff's acceptance of employment with defendant, plaintiff was given an offer letter which specifically stated the plaintiff's employment "can be terminated at any time with or without cause and with or without notice at the option of either the company or the employee." (Def.'s Mem. at Exhibit B). In addition, plaintiff was given a disclaimer that expressly stated that "no manager or representative of BW/IP has the authority to enter into an agreement for employment for any specific period of time or to make any agreement contrary to this disclaimer." (Def.'s Mem. at Exhibit B).

In deposition testimony, plaintiff acknowledges receiving and understanding both of these documents. (Sharp Dep. 2/24/97 at 83–84). Further, plaintiff testified that he signed an acknowledgment form evidencing his understanding that his employment was at-will and that no manager at the company had authority to change the at-will relationship. (Sharp Dep. 2/24/97 at 83–84). Plaintiff further acknowledges that relocation was never discussed in the employment discussions prior to employment and that at no other time did anyone from BW/IP, other than the alleged intimations by his immediate supervisor, ever indicate that he should move. (Sharp Dep. 2/24/97 at 78–85). Plaintiff also acknowledges that even the manager who allegedly suggested to him that he move never indicated that plaintiff's employment was in any way conditioned upon his relocation. (Sharp Dep. 4/23/97 at 422).

Plaintiff's evidence is insufficient to show an intent by both parties to overcome the employment-at-will presumption. Therefore, Defendant's Motion for Summary Judgment is granted for the breach of implied-in-fact employment contract claim.

**460**

*D. Conclusion*

An appropriate Order follows.

ORDER

AND NOW, this ___ day of January, 1998, upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED that in accordance with the foregoing Memorandum, the Motion is GRANTED in PART and DENIED in PART as follows:

1) Defendant's Motion is GRANTED for the PHRA, ERISA, and breach of an implied-in-fact employment contract claims and

2) Defendant's Motion is DENIED for the ADEA claim.