631 A.2d 1314

**Patricia NIEHAUS, Appellant,**

v.

**DELAWARE VALLEY MEDICAL CENTER, Appellee.**

Superior Court of Pennsylvania.

Argued April 27, 1993.

Filed Aug. 27, 1993.

Reargument Denied Nov. 5, 1993.

120

Michael P. Kelly, Langhorne, for appellant.

Jonathan B. Sprague, Philadelphia, for appellee.

Before CAVANAUGH, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

After an approved nine months' leave of absence without pay, Patricia Niehaus sought to resume her employment at the Delaware Valley Medical Center. The employer refused to rehire her, and Niehaus sued. In an amended complaint she alleged that the medical center had breached an express or implied contract to rehire her. The trial court, in response to preliminary objections, dismissed the amended complaint with prejudice. Niehaus appealed.[1]

1. Niehaus had filed an original complaint asserting in three counts: breach of contract, estoppel, and violations of the Wage Payment and Collection Law. Preliminary objections were sustained by the trial

In reviewing an appeal from an order sustaining preliminary objections in the nature of a demurrer to a complaint, we accept as true all material facts alleged in the complaint and all reasonable inferences which can be drawn therefrom. *Hornung v. Schauseil Insurance Associates, Inc.*, 422 Pa.Super. 472, 478, 619 A.2d 775, 778 (1993). The amended complaint in this case alleged that Niehaus, an employee of Delaware Valley Medical Center, had made a written request for a leave of absence of nine months duration and had obtained her employer's approval therefor. This was in agreement with a provision in an employee handbook which stated that if an employee were granted an approved leave of absence, that employee, at the end thereof, would be guaranteed the same or similar position to that occupied prior to the leave of absence. The handbook also stated, however, that the provisions in the handbook were not to be interpreted as a contract of employment and that either party could terminate the employment relationship at any time. At the conclusion of Niehaus's leave of absence, the medical center refused to rehire her for any position. Niehaus sued. She contended that she had either an express contract, or an implied contract based on promissory estoppel, that she would be rehired following an approved leave of absence.

The presumption under Pennsylvania law is that all employment is at will and, therefore, an employee may be discharged for any reason or no reason. *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 94, 545 A.2d 334, 336 (1988). "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 89, 559 A.2d 917, 918 (1989). "The *sine qua non* of the presumption is that except in rare instances, discharges will not be reviewed in a judicial forum." *Scott v. Extracorpo-*

court and Niehaus was given permission to file an amended complaint. In her amended complaint, Niehaus asserted only counts sounding in breach of contract and estoppel. Preliminary objections were again sustained by the trial court. Because only the amended complaint is before us for review, we do not consider a claim under the Wage Payment and Collection Law.

*real, Inc., supra* 376 Pa.Super. at 95, 545 A.2d at 336. The burden of overcoming the presumption and proving that one is not employed at-will "rests squarely" with the employee. *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 323, 612 A.2d 500, 503 (1992). In order to rebut the presumption of at will employment, a party must establish the existence of: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged only for just cause; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception. *Robertson v. Atlantic Richfield Petroleum,* 371 Pa.Super. 49, 58, 537 A.2d 814, 819 (1987), *allocatur denied,* 520 Pa. 590, 551 A.2d 216 (1988).[2]

In *Richardson v. Charles Cole Memorial,* 320 Pa.Super. 106, 466 A.2d 1084 (1983), an employee handbook issued to the plaintiff contained a statement that the employer's policy was to offer "continuous employment to all employees whose work proves satisfactory." The plaintiff, who had been hired under a contract of indefinite duration, alleged in her complaint for wrongful discharge that the provisions of the employee handbook had created an employment contract which had been breached by the employer. The Superior Court rejected this argument, explaining that the "[employer's] unilateral act of publishing its policies did not amount to the 'meeting of the minds' required for a contract." *Id.* at 108, 466 A.2d at 1085. See also: *Darlington v. General Electric,* 350 Pa.Super. 183, 204, 504 A.2d 306, 316 (1986) (court questioned binding nature of employee handbooks on employers). Similarly, in *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830 (1986), *allocatur denied,* 514 Pa. 643, 523 A.2d 1132 (1987), the plaintiff had been hired as an at will employee. She was given an employee handbook which contained a provision listing various acts deemed violative of the employer's standard of

**2.** Other cases have defined these elements in slightly different terms. See, e.g.: *Scott v. Extracorporeal, Inc., supra* (presumption may be overcome by [1] express contract, [2] implied in-fact contract, [3] additional consideration passing from the employee to the employer and [4] discharge [of at-will employee] would contravene a clear public policy or if it is effected with the specific intent to harm the employee).

conduct and which represented cause for disciplinary action. The handbook provided, however, that it could be modified by the employer at any time. When the plaintiff was terminated for reasons other than those listed in the handbook, she sued her employer, alleging a breach of contract. She contended that the provisions of the handbook had transformed her status from an at will employee to one who could only be terminated for cause. The Court disagreed explaining:

> This would be a modification of immense proportions. For such an extreme modification of a preexisting contract, we would require a clear statement of an intent to so modify. We do not believe a reasonable person in the [plaintiff's] position would have read this handbook provision as converting her from an at-will employee to an employee with an indefinite contract who could never be discharged without objective just cause.... The vagueness and the generalities [of the handbook's language] coupled with the employer's reservation of power to unilaterally alter the handbook's terms would lead a reasonable at-will employee to interpret its distribution as an informational guideline, and *not* as the exclusive enumeration of the entire panoply of rights and duties existing between employer and employee which served to displace the at-will contract that already existed between employee and employer.

*Id.* 354 Pa.Super. at 215–216, 511 A.2d at 838–839. See also: *Reilly v. Stroehmann Bros. Co.*, 367 Pa.Super. 411, 416, 532 A.2d 1212, 1214 (1987), *allocatur granted*, 520 Pa. 577, 549 A.2d 137 (1988) (contract formed between employer and employee via employee handbook only if it "contain[s] unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment.").

In a slightly different context, in *Morosetti v. Louisiana Land and Exploration Company*, 522 Pa. 492, 564 A.2d 151 (1989), the plaintiffs argued that they were entitled to severance pay from their employer because there existed a policy in a manual used by the employer's personnel manager. The trial court directed a verdict in favor of the employees on the basis that the employer had made a handbook offer for

severance pay which had been accepted by the employees. The Supreme Court reversed, holding that a definitive offer for the severance pay was never made. The Court stated:

> It is not sufficient to show they had a policy. It must be shown they offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.

*Id.* at 496, 564 A.2d at 153. See also: *Rutherfoord v. Presbyterian–University Hospital, supra; Vincent v. Fuller Co.,* 400 Pa.Super. 108, 582 A.2d 1367 (1990), *reversed on other grounds,* 532 Pa. 547, 616 A.2d 969 (1992).

■ The appellee-medical center contends in this case that because appellant was an employee at will, she could be terminated for any reason or for no reason, and that it would be absurd to require a rehiring of appellant when she could thereafter be discharged immediately. Because she could be discharged at any time and for any reason, the argument goes, her employer could refuse to reinstate her even following an approved leave of absence. Any contrary provision in the employee handbook, it is suggested, was not a definite part of appellant's contract of employment but merely an informal guideline which could be changed at will by the employer. Moreover and in any event, suggests the employer, there was no consideration for an agreement to rehire appellant following an approved leave of absence. It is argued, therefore, that the provision in the handbook is unenforceable.

After careful review, we reject appellee's arguments. Although they have superficial appeal, they do not withstand the light of closer examination. If appellant was initially an employee at will, she nevertheless took a leave of absence only with her employer's approval and upon its promised guarantee that she would be reinstated at the end thereof in the same or a similar position. This, if the averments of her complaint are correct, created a contract. To hold otherwise would be to condone blatant deception.

Courts have found "additional consideration" to support employment contracts for a definite duration "when an employee affords his [or her] employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he [or she] is hired to perform." *Darlington v. General Electric, supra* 350 Pa.Super. at 201, 504 A.2d at 315. In *Scullion v. EMECO Industries, Inc.,* 398 Pa.Super. 294, 580 A.2d 1356 (1990), *allocatur denied,* 527 Pa. 625, 592 A.2d 45 (1991), the employee had been discharged after three months of employment. He had been promised by his employer that "[this] was the last job he would ever have" and he had turned down an incentive to remain with his former employer, had sold his home in California, had moved his family to Pennsylvania and had purchased real estate in Pennsylvania. Under these circumstances, the Court held, there was a jury question regarding the sufficiency of the additional consideration to overcome the presumption of an employment at will and render the promise enforceable. Similarly, in *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (1987), a jury question existed where plaintiff allegedly had been promised lifetime employment in exchange for his acceptance of a rate of pay below union wages and where he, in fact, had worked for twenty-four (24) years at sub-union rates. Compare: *Scott v. Extracorporeal, Inc., supra* 376 Pa.Super. at 101, 545 A.2d at 339 (at will presumption not rebutted where there was no evidence that "[employee] brought any abilities to the job, aside from the services for which she was compensated, which were beneficial to her employer or that she sacrificed anything tangible pursuant to the agreement beyond that for which she was paid."); *Martin v. Capital Cities Media, Inc., supra* 354 Pa.Super. at 217, 511 A.2d at 839 (where employee handbook was given to plaintiff gratuitously, there was no evidence of either an additional consideration rendered by plaintiff or an intent by employer to change plaintiff's at will status); *Darlington v. General Electric, supra* 350 Pa.Super. at 202, 504 A.2d at 315 (court did not find additional consideration where employer terminated plaintiff's employment after fifteen years of service and plain-

tiff's decision to leave his former company "was simply a reasoned choice of a new career goal.").

In the instant case, whether or not there was consideration, the employer's promise is enforceable under principles of promissory estoppel.[3] "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts, § 90(1). Where an employer expects, if not demands, that its employees abide by a policy expressed with particularity in an employee handbook, an employee may justifiably rely thereon and expect justifiably that the employer will do the same. Thus, when an employer announces a specific practice or policy, especially in light of the fact that it expects employees to abide by the same, the employer may not treat its promises as being illusory. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 230, 685 P.2d 1081, 1088 (1984).

Here, the medical center, by its handbook, had guaranteed its employees that if a leave of absence were requested and approved by the employer, then the employee could return at the end of the leave of absence and would be restored to the same or similar position as that occupied by the employee prior to the leave of absence. Under this policy, the employer had a right to expect a stable work force, where employees would take leave of absence only with the employer's consent and approval. An employee who was granted an approved leave of absence, however, could also rely upon the employer's promise that the employee would be rehired. The employer's promise was not illusory. When the appellant employee was induced in fact to seek and obtain an approved leave of absence without pay on the assurance that she could return to

---

**3.** Promissory estoppel under Section 90 of the Restatement (Second) of Contracts is not the same as equitable estoppel, although the two principles are related. See: *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990); *Ruzicki v. Catholic Cemeteries Association,* 416 Pa.Super. 37, 610 A.2d 495 (1992).

the same or similar employment at the expiration of her leave, enforcement of the promise was essential to avoid injustice.

The appellee-medical center argues, however, that a cause of action for breach of a contract of employment cannot be based on the provisions of a handbook where other language disclaims an intent to form a contract. In this case, appellant was initially employed at will, and nothing in the employee handbook was sufficient to change the employee's status by conferring contractual rights. See: *Rutherfoord v. Presbyterian–University Hospital, supra; Ruzicki v. Catholic Cemeteries Ass'n,* 416 Pa.Super. 37, 610 A.2d 495 (1992). When the employee requested a leave of absence without pay, the employer could have refused to approve it or, indeed, could have revoked its promise of renewed employment at the end of the leave of absence. This it did not do. Instead, it approved the leave of absence pursuant to and in accordance with its handbook promise to restore the employee to the same or a similar position as that occupied by the employee before the leave of absence. It is this approval which thereupon gave rise to an implied contract and not the mere language of the handbook. The promise of rehiring was a part of the approved leave of absence to which both parties had agreed.[4]

It must be conceded, as appellee argues, that the agreement did not provide that appellant would continue to be employed for any specific period. On the other hand, appellant was not unknown to the medical center. She was an experienced employee, whose leave of absence had been approved, and whose capabilities or lack thereof were known to the medical center. By approving her leave of absence in accordance with the guarantee contained in the employee handbook, the employer impliedly agreed to rehire her at the end of her leave of

4. The dissent's lament that the decision in this case will have far-reaching repercussions and will revise and confuse the law applicable to at-will employment is without foundation. The facts of this case are entirely different from and more compelling than those of prior appellate court decisions permitting the discharge of at-will employees for any reason or no reason. Our decision is limited to the facts of this case. It has application only where an employee takes a leave of absence with the employer's express approval and upon his promise of re-employment at the end of such approved leave of absence.

absence for at least a reasonable period of time unless she was then unable to perform satisfactorily the duties of such employment.

> When there is no express provision in a contract as to its duration, the intention of the parties regarding the duration and the termination of the contract is to be determined from the nature and the subject-matter of the contract, from the circumstances under which it was executed, and by an application of a reasonable construction to the agreement as a whole. Contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a reasonable time or some particular period inferred from the nature and the circumstances of the undertaking.

8 P.L.E., Contracts § 245 (footnotes omitted). See: *Price v. Confair*, 366 Pa. 538, 79 A.2d 224 (1951). See also: *Scullion v. EMECO Industries, Inc., supra* 398 Pa.Super. at 299, 580 A.2d at 1359 ("When the exact period for which the parties intended to contract is unable to be determined, an agreement for a 'reasonable time' will be inferred."); *Straup v. Times Herald*, 283 Pa.Super. 58, 64–65, 423 A.2d 713, 716–717 (1980) ("It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for at least a reasonable period where the duration of the employment is not otherwise defined.").

For these reasons we conclude that the trial court erred when it summarily dismissed appellant's amended complaint. The complaint is sufficient to allege a cause of action for breach of a contract to rehire.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent. The majority opinion holds that the doctrine of promissory estoppel can elevate an employee's

handbook into an implied contract where it is conceded that there is no intent by the employer to be bound by the handbook.[1] The majority opinion's analysis is contrary to the well-established law in this Commonwealth that an employee handbook does not bind the employer unless it expresses a clear intent by the employer to be bound. It also makes dramatic inroads into the employment at-will doctrine, adding a new exception to the only recognized exception to the doctrine, a termination that violates public policy.

There is hardly a more settled principle under Pennsylvania law that an employee handbook does not overcome the employment at-will presumption unless the handbook's language clearly expresses that the employer intended such a result. *Rutherfoord v. Presbyterian–University Hospital*, 417 Pa.Super. 316, 323, 612 A.2d 500, 503 (1992); *Ruzicki v. Catholic Cemeteries Ass'n*, 416 Pa.Super. 37, 42, 610 A.2d 495, 497 (1992); *Mudd v. Hoffman Homes for Youth, Inc.*, 374 Pa.Super. 522, 530, 543 A.2d 1092, 1096 (1988); *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 97, 545 A.2d 334, 338 (1988); *Reilly v. Stroehmann Bros. Co.*, 367 Pa.Super. 411, 415, 532 A.2d 1212, 1216 (1987); *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 222, 511 A.2d 830, 841–842 (1986). The employee handbook *sub judice* does not express any clear intention by the employer to be bound by its contents. Quite to the contrary, the handbook's first page contains, in block text, a disclaimer:

> I hereby acknowledge that I have received a copy of the Delaware Valley Medical Center's Employee Handbook which covers rules, policies and regulations pertaining to my employment. I understand and acknowledge that this Employee Handbook is not a contract of employment for any

1. In various parts of the majority opinion it is asserted that there is an enforceable contract; that there may be "additional consideration" to presumably support a leave of absence agreement; and finally that the leave policy is enforceable under the doctrine of promissory estoppel. The majority, however, only undertakes an extensive analysis of whether the leave policy is enforceable under the doctrine of promissory estoppel. As the majority has failed to provide an adequate explanation of any contractual theory upon which relief may be granted, I will only address the majority's promissory estoppel argument.

specified period of time. I understand that I may voluntarily leave my position upon proper notice or be terminated by the Medical Center at any time and for any reason. Any oral or written statements or promises to the contrary are hereby expressly disavowed by the Medical Center and are not relied upon by the undersigned. I further understand that the contents of this Handbook are subject to change at any time at the discretion of the Medical Center.

The majority opinion appears to recognize that under Pennsylvania law, that this employee handbook evidences no intent by the employer to be bound. It concludes that the "appellant was initially employed at will, and nothing in the employee handbook was sufficient to change the employee's status by conferring contractual rights." Opinion at 1318.

Notwithstanding, the majority argues that the employee handbook expresses a policy regarding leaves of absence that is enforceable against the employer under the principles of promissory estoppel. The tenor of its analysis is that where an employer expects, if not demands, its employees to abide by policies expressed with particularity in an employee handbook, an employee can justifiably rely on the fact that the employer will adhere to the handbook's policies also. It cites for support of this proposition. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984).[2]

The majority analysis seems to be espouse a revision of principles that are well-settled under Pennsylvania law. As stated *supra,* an employee handbook must contain a clear expression of an employer's intent to be bound by its contents for the principle of at-will employment to be obviated. The majority opinion appears to recognize this legal doctrine, as noted *supra,* and also that this handbook displays no intent to be bound. Notwithstanding, for the purposes of promissory estoppel, the majority opinion concludes that the employee

2. Although the lower court dismissed the appellant's complaint at a preliminary stage in the litigation for failure to state a cause of action, the majority opinion's analysis appears to dictate that the appellant be rehired.

handbook *evidences* an intent for the employer to be bound by its provisions.

I do not see how one can have it both ways. It is difficult to see how the employee handbook does not evidence an intent to be bound for the purposes of treating the booklet as a contract yet still evidence an intent for the employer to be bound for the purposes of promissory estoppel. Either the handbook expresses a clear intent by the employer to be bound or it does not. Since the majority opinion concedes that the employee manual does not evidence an intent to be bound, its inquiry should go no further. Accordingly, the premise of its argument, that the employer expected the handbook to represent the mutual obligations of the employer and the employee, is erroneous.

The Washington state decision that the majority opinion cites as its principal authority for applying the doctrine of promissory estoppel to employee handbooks is neither controlling nor contrary to our analysis. Directly after the *Thompson* court's analysis regarding circumstances where an employee manual might bind an employer, the court stated as follows:

> It may be that employers will not always be bound by statements in employment manuals. They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy. Additionally, policy statements as written may not amount to promises of specific treatment and merely be general statements of company policy and, thus, not binding. Moreover, the employer may specifically reserve a right to modify those policies or write them in a manner that retains discretion to the employer.

*Thompson*, 102 Wash.2d at 230–31, 685 P.2d at 1088. Accordingly, where, as here, an employer specifically disclaims any intent to be bound by the employee handbook, the employer is not bound by policy aspirations expressed in it. If anything, *Thompson* is in accord with traditional Pennsylvania law

regarding employee handbooks, and militates that the lower court should be affirmed.

It appears to me that the majority opinion's analysis establishes what appears to be an internally inconsistent and illogical exception to the general rule applicable to employee handbooks. The general rule is that such handbooks do not bind an employer unless there is a clear intent in that handbook the employer be bound. Yet the majority posits that an exception to this is when the handbook articulates certain policies which the employee could justifiably expect would be followed. I would submit that the rule and the exception share the self-same inquiry: whether the handbook clearly evidences an employer's intent to be bound by it. One can opine that the handbook evidences a clear intent to be bound, or one can claim the opposite, but one cannot do both.

Any attempt to resurrect the promissory estoppel doctrine in this context in any event is untenable in light of our Commonwealth's Supreme Court ruling in *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990). In *Lankenau*, an employee was terminated for allegedly removing five refrigerators from the place of his employment. The employee stated he was given oral approval by the employer's storeroom manager to remove the refrigerators, and thus, the employer should be estopped from firing him for this reason. In the course of overruling a Superior Court *en banc* decision which ruled the doctrine of promissory estoppel prevented the employer from terminating its employee, our Supreme Court declared as follows: "[a]n employee may be discharged with or without cause, and *our law does not prohibit firing an employee for relying on an employer's promise.*" *Id.* at 95, 569 A.2d at 348 (emphasis added); *accord Ruzicki v. Catholic Cemeteries Ass'n*, 416 Pa.Super. 37, 610 A.2d 495 (1992).

It is true that our Supreme Court declared the foregoing in reference to whether the doctrine of equitable estoppel is an exception to the employment at-will doctrine. *Lankenau, supra*, 524 Pa. at 95, 569 A.2d at 348. The Court's word choice *supra*, however, instructs the Bench and Bar that the court would look with disfavor at trying to evade the employ-

ment at-will doctrine through the use of promissory estoppel. Moreover, it is apparent from the Court's reasoning that the doctrine of promissory estoppel is not a viable exception to the employment at-will doctrine. As the Court expressly reiterated in *Lankenau,* quoting with approval *Clay v. Advance Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989): "[e]xceptions to [the employment at-will doctrine] have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Lankenau, supra,* 524 Pa. at 95, 569 A.2d at 348, *quoting Clay, supra,* 522 Pa. at 89–90, 559 A.2d at 918. Promissory estoppel, accordingly, just as equitable estoppel, must fail as an exception to the employment at-will doctrine.[3]

Viewed in light of *Lankenau*'s reaffirmance of the employment at-will doctrine, the majority's declaration that this admittedly at-will employee may recapture her job (or a similar one) for "at least" a "reasonable period of time" is suspect. Such a conclusion rests decidedly uneasily with our pronouncements that an employer may terminate an at-will employee for good reason, bad reason, or no reason at all. *Nix v. Temple University,* 408 Pa.Super. 369, 375, 596 A.2d 1132, 1135 (1991); *Hershberger v. Jersey Shore Company,* 394 Pa.Super. 363, 368, 575 A.2d 944, 946 (1990), appeal denied, 527 Pa. 601, 589 A.2d 691 (1991). I find it interesting that the majority does not undertake to declare what the duration of this new employment period will be. It leaves to some other court in the future to ponder the potentially unanswerable question of what the "reasonable period of time" exactly is that the employer must retain this employee with no contractual rights to continued employment.

The majority opinion's analysis has the potential for far-reaching repercussions. The most assured result is that it will make the law relating to employee handbooks analytically

3. As noted *supra,* the majority opinion does not appear to argue that an employer's promise to an employee binds the employer under the doctrine of promissory estoppel. Rather, the argument appears to be that the doctrine binds an employer who acts consistently with an employee handbook which the employer and employee mutually agree is binding under the doctrine of promissory estoppel.

unworkable. Its reasoning will also engender trial court confusion in ascertaining the law applicable to employee handbooks. I submit that the majority opinion's analysis has muddied the waters of what is the purest of doctrinal streams in our Commonwealth's jurisprudence.[4]

4. For an interesting judicial lamentation on the effect of expansive judicial creation of perceived infringement of employee rights, it is interesting to note the comments of a California appeals court decision. The majority opinion writer in an intermediate appellate court decision, after feeling constrained by judicial precedent to affirm a seven million dollar award for improper discharge and allied claims, opined:

> This area of the law is quickly running out of control and the citizens of California will be the ultimate victims and losers. Court-made law, imposed without public hearings or a public debate of the issues, cannot be dictated in this regard by this court. But, it is clear that commerce in California cannot flourish with such multi-million dollar verdicts readily attainable. Legislative caps or limits have been imposed in certain areas of medical malpractice and workers compensation. If the Legislature fails to act in this area, we can see that, in due course, business enterprises will flee the state. It is not our obligation to make the laws, but it is our responsibility to point out where laws are needed.

> We also agree with the learned lament expressed by our esteemed colleague, *infra*.

*Hunio v. Tishman Const. Corp. of Cal.*, 14 Cal.App.4th 1010, 18 Cal.Rptr.2d 253, 266 (2 Dist.1993).

The writer, Judge Aranda, joined in the remarks of Associate Justice Ortega, which are as follows:

> I reluctantly concur. I agree with the majority's analysis and write only to lament the extent to which employees can claim emotional distress because their working conditions are less than ideal. To paraphrase what happened here, the employer created an "intolerable" situation for Hunio by the following: "We'll make him quit by giving him small raises and small bonuses." (Maybe if they had given him big raises and big bonuses, he would have quit sooner.) Many employees should be so lucky. Only in Wonderland, one would think, could such be considered the creation of an intolerable work situation. But the jury weighed the evidence, and, under the current state of the law, I can't find a way to conclude there was insufficient evidence.

> We all know people who are dissatisfied with their jobs, but who nonetheless stick it out—especially during periods when jobs are hard to come by. We all know someone who has put up with a rough situation for a few years so he can get to his retirement. In California, however, it seems that merely having a good job with good pay is not enough. If the job isn't "fulfilling" or doesn't build the employee's "self esteem," the employer is somehow derelict, in spite of providing good pay and good benefits. While many employees fully expect to ride high during the good times, they are quick to jump on

For the foregoing reasons, I dissent. I would find that the lower court's granting of the appellee's preliminary objections was appropriate and should be affirmed.

the emotional distress wagon as soon as the situation takes a downturn.

No one would want to go through a period from one day to the next whether termination is around the corner. But auto workers and aero-space workers, for example, have gone through years of such distress and haven't cracked up, but rather have stuck it out hoping for the best and preparing for the worst. When the worst has happened, most have gotten on with their lives and sought something else. I don't think it is unusual for someone with a long history of employment to have at one time or another worked for a nasty boss. No matter how hard we try, we will never be able to guarantee that a worker will spend a career without having to endure personal animosity from a co-worker or supervisor.

We seem to be on the verge of guaranteeing the right to a "nice and easy" career. I don't see how a company can operate when it must cater to those of such tender sensibilities. Maybe that's one of the reasons some of the companies are moving way. Hunio can live in ease, but a cumulation of this type of litigation promises nothing but ill for employees of companies which can no longer absorb this type of a business cost.

*Hunio, supra,* 18 Cal.Rptr.2d 253 at 267.