# Luteran v. Fairchild Weston Systems Inc.

98

C.P. of Montgomery County, no. 88-05882.

*Richard W. Rogers*, for plaintiff.
*Steven R. Wall*, for defendant.

*EN BANC*, TRESSLER, SMYTH, MOORE, *JJ.*, July 9, 1996—In the above-captioned matter, plaintiff sued defendant for wrongful discharge and fraud. The case was tried before a jury April 10, 1995 through April 12, 1995, the Honorable Paul W. Tressler presiding. On April 12, 1995, at the close of plaintiff's evidence, Judge Tressler granted the defendant's motion for a nonsuit. Plaintiff then filed a motion to remove the nonsuit and grant a new trial. The court heard argument on the motion en banc. Plaintiff appeals from the court's order dated March 14, 1996, denying the motion. On appeal, plaintiff argues this court erred in assigning him the burden of proving he was discharged without just cause and determining that his claims failed as a matter of law.

## FACTS

Plaintiff began working for the Archbald, Pennsylvania facility of Weston Controls in 1977. N.T. at 30. At the time this suit was filed, Weston Controls had changed its name to Fairchild Weston Systems Inc.

After the suit was filed, the company changed its name again, and is now known as Loral Fairchild.

Plaintiff testified that at the time he accepted employment, defendant provided him with an employee handbook addressing, among other things, discharge of employees. N.T. at 55. While defendant maintains no handbook existed at that time, this court, for the purposes of granting the nonsuit, and reviewing the instant motion, assumes plaintiff testified correctly. Neither plaintiff nor defendant produced a copy of the handbook as it existed in 1977 when plaintiff was hired, but plaintiff did produce a copy of a handbook dated October 1981. N.T. 56. The handbook reads, in pertinent part:

"Discharge

"You may only be discharged for just cause. Some examples of just cause are excessive tardiness, absenteeism, insubordination, dishonesty, pilferage, incompetence, inefficiency, intoxication, use of drugs on the job, attempting to influence fellow employees to limit production, and deliberately damaging company property or injuring a co-worker." Trial exhibit P-2 at 1-15 (reproduced as exhibit "B" in defendant's memorandum in opposition to plaintiff's motion to remove nonsuit).

The handbook also contained the following language in the preface written by Richard A. Mohrman, the vice president and general manager of Weston Controls:

"This is your personal copy of the Weston Controls Employee Guide. . . .

"I hope the guide serves you as a valuable reference for many years. Since it is looseleaf, we will be able to add and replace sections to keep it current as changes occur—as they inevitably will." Trial exhibit P-2, preface.

Plaintiff testified he did not know of the existence of the handbook and its just cause provision prior to the time he began working for defendant. N.T. 129. He also testified he did not receive a written employment contract or a letter setting forth the terms of his employment. N.T. 126. He further stated he had no written document of any kind guaranteeing his employment for a defined period of time. N.T. 127-28.

Plaintiff began working for defendant as manager of nuclear engineering. N.T. 37-38. During his tenure at Weston Controls, he was evaluated as an employee yearly. N.T. 44. He never received an evaluation lower than "normal expectancy." N.T. 46. In 1985, defendant offered plaintiff a newly created position, technical director, stating he was the employee most qualified to assume the position. N.T. 62-63.

After considering the new position, plaintiff accepted it. N.T. 68. Although the position did not entail an increase in compensation, plaintiff considered it a promotion. N.T. 143. Plaintiff admitted he received no oral or written promises or representations of any kind regarding the duration of the position. N.T. 142. In 1986, plaintiff's supervisor told him his position had been eliminated due to financial constraints, N.T. 91, and discharged him. N.T. 78.

This case was tried before a jury April 10, 1995 through April 12, 1995, the Honorable Paul W. Tressler presiding. On April 12, 1995, at the close of plaintiff's evidence, Judge Tressler granted the defendant's motion for a nonsuit. In an abundance of caution, Judge Tressler then allowed plaintiff to reopen his case to present evidence that plaintiff was fired without just cause. At the close of plaintiff's case, Judge Tressler again granted a judgment of nonsuit. Plaintiff submitted a motion to remove the nonsuit. That motion was denied

by a panel sitting en banc, by order dated March 14, 1996.

## ISSUES

Plaintiff filed a concise statement of matters complained of on appeal raising 25 items and sub-items. An analysis of these allegations reveals they raise only five issues.[1] Three are procedural:

(1) Whether the court erred in determining that reasonable minds could not differ on the facts presented;[2]

(2) Whether the court erred in assigning plaintiff the burden of proving he was not fired for just cause;[3] and

(3) Whether the court prejudiced his ability to present his case when it bifurcated the liability and damages phases.[4]

---

1. Plaintiff's motion to remove the nonsuit had raised 39 items for review. Like the items in the concise statement, most merely re-state the same issues in different language. Two of those issues, however, have not been raised in the concise statement: whether the court prejudiced plaintiff's ability to present his case by bifurcating the liability and damages portions of trial, and whether the court erred in concluding that just cause for discharge is not limited to employee misconduct, but may also include a decision by an employer to trim its workforce. Both the concise statement and the petition to remove the nonsuit fail to raise any allegation of error concerning this court's decision to grant a nonsuit on plaintiff's claim for fraud. This opinion addresses these issues, since plaintiff has not necessarily waived them by failing to raise them in the concise statement. *Taylor v. Owens-Corning Fiberglas Corp.*, 446 Pa. Super. 174, 666 A.2d 681 (1995).

2. Concise statement, items 1(d), 9-13.

3. Concise statement, items 6, 7, 15.

4. Not raised in concise statement, but raised in motion to remove nonsuit and for grant of new trial, ¶1 ak.

The other two issues are substantive:

(1) Whether the court erred in concluding plaintiff failed to rebut the presumption of at-will employment;[5] and

(2) Whether the court erred in concluding that just cause is not limited to employee misconduct, but may also include a decision by an employer to trim its work-force.[6]

This court faces an additional substantive issue not raised by plaintiff in the concise statement or motion to remove nonsuit:

(3) Whether plaintiff's claim for fraud was properly nonsuited.

## DISCUSSION

The following discussion first addresses procedural issues before disposing of the substantive issues.

### A. *Procedural Issues*

### 1. Standard of Review: Whether the Court Erred in Determining That Reasonable Minds Could Not Differ on the Facts Presented

When considering a motion for judgment of nonsuit, the trial court must afford the plaintiff the benefit of every fact and reasonable inference arising from the evidence. *Canty v. Sun Transport Inc.,* 422 Pa. Super. 607, 610, 620 A.2d 1, 2 (1992). The trial court may award a judgment of nonsuit only if reasonable people could not differ as to the facts and reasonable inferences

---

5. Concise statement, items l(a)-(c), (e), (f), 2(a)-(c), 3, 4, 5(a)-(c), 14.

6. Not raised in concise statement, but raised in motion to remove nonsuit and for grant of new trial, ¶¶1 i, j, k, 1, n, o, ai.

drawn therefrom. *Id.* at 611, 620 A.2d at 1-2. The court adhered to this rule when it considered defendant's motion for nonsuit.

When reviewing a motion to set aside a judgment of nonsuit, the court should grant the plaintiff the benefit of every fact and reasonable inference, resolve all conflicts in favor of the plaintiff, accept as true all facts and inferences sustaining the plaintiff's claims, reject all facts and inferences arising from parol evidence, if contrary to the plaintiff's claims, and resolve all conflicting facts and inferences in the plaintiff's favor. Pa. Standard Practice, §58:70 (1982).

Plaintiff asserts that the court erred in finding that reasonable minds could not differ on the facts presented. On the contrary, when considering the motion for nonsuit, the court assumed the truth of all of plaintiff's evidence, and gave plaintiff the benefit of all favorable inferences. Even so, plaintiff's evidence failed to establish a prima facie case on any count, as the discussion of substantive issues will show. Therefore, this court's order granting judgment of nonsuit was not based on erroneous findings of fact.

### 2. Burden of Proof: Whether the Court Erred in Assigning Plaintiff the Burden of Proving He Was Not Discharged for Just Cause

With regard to his claim of wrongful discharge, Pennsylvania law presumes all employment relations are at-will, and the plaintiff bears the burden of proving otherwise. *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 323, 612 A.2d 500, 503 (1992). Plaintiff raises a related, but distinct, issue, asserting that the court improperly assigned him the burden of proving that he was discharged without just cause.

Plaintiff bears the burden of rebutting the presumption of employment at-will. Had he proven an agreement that defendant could not have discharged him without just cause, the burden may have shifted to defendant to show he was fired for cause. While no Pennsylvania case establishes a shifting burden,[7] other jurisdictions have adopted such a procedure. *E.g. Pugh v. See's Candies Co. Inc.,* 171 Cal.Reptr. 917 (1981) (plaintiff bears burden of proving wrongful termination, and if plaintiff proves prima facie case, burden shifts to employer to prove legitimate reason for discharge; if employer carries burden, burden returns to plaintiff to prove employer's grounds are mere pretense).

Because plaintiff never rebutted the presumption of at-will employment, this court was never required to decide the issue of whether plaintiff was discharged for just cause. Hence, although the court received evidence on this point, none was called for. Thus, even if the court erred in allocating the burden of proving just cause for termination, this issue is moot, and the error was harmless.

With regard to plaintiff's fraud claim, a party alleging fraud bears the burden of proving it. *In re 1983 Audit Report of Beharry,* 116 Pa. Commw. 613, 544 A.2d 514 (1988). While plaintiff does not contend this court erroneously saddled him with the burden of proving fraud, the fact that the burden is his becomes relevant

---

7. In his memoranda in support of his motion to remove nonsuit, plaintiff cited *Lucacher v. Kerson,* 158 Pa. Super. 437, 45 A.2d 245 (1946) in support of this proposition. *Lucacher,* however, does not address the burden of proving whether the employer had just cause to discharge the employee. Rather, the case stands for the proposition that the employer bears the burden of proving that the employee could have mitigated damages by holding employment elsewhere after the discharge.

in the discussion below on whether this court appropriately granted a nonsuit on the count of fraud.

### 3. Whether the Court Prejudiced Plaintiff's Ability To Present His Case When It Bifurcated the Liability and Damages Phases

Although the court bifurcated the presentation of evidence of liability from that of damages, plaintiff nevertheless was permitted to testify as to evidence relevant to damages, as long as it was also relevant to liability. For example, the court overruled defendant's objection to plaintiff's testimony that he was shocked when he was told he was discharged. N.T. 86. Although such evidence would have been relevant to emotional damages on the tort claim of fraud, it was also relevant to show that he had no prior knowledge that he would be fired. This fact is relevant to show defendant had not discharged plaintiff for poor performance, since plaintiff testified that employees are given warnings when their performance has put their jobs in jeopardy.

Similarly, the court also overruled defendant's objection to plaintiff's testimony that at the time he was discharged, he had four daughters in college and three relatives temporarily living in his home. N.T. 90-91. Plaintiff also testified that he had built a home in the Archbald area. Such facts, while relevant to economic damages on the contract and fraud claims, were also relevant to whether defendant had been warned that his performance was poor and that he might be discharged. This testimony was also relevant to his reliance on the just cause provision in the handbook, in light of his claim in count three of the complaint, which raised the theories of promissory and equitable estoppel. In light of the fact plaintiff was allowed to give testimony relating to damages as long as it also concerned liability,

he suffered no prejudice due to the bifurcation, and the court did not err in this regard.

## B. *Substantive Issues*

### 1. Whether the Court Erred in Concluding Plaintiff Failed To Rebut the Presumption of At-Will Employment.

Plaintiff contends that the court erred in concluding he failed to rebut the presumption of at-will employment. Subsumed within this general allegation of error are several more specific issues:

(a) Whether the court erred in concluding plaintiff failed to prove the handbook did not create an employment contract not terminable at-will;[8]

(b) Whether the court erred in concluding the issuance of the October 1981 handbook did not modify plaintiff's at-will employment status to one in which he could not be discharged without just cause;[9]

(c) Whether the court erred in determining that plaintiff's reliance upon the handbook did not estop defendant from discharging plaintiff;[10]

(d) Whether the court erred in finding plaintiff's acceptance of his new position did not constitute additional consideration creating an employment contract not terminable at-will;[11]

---

8. Concise statement, items 1(f), 5(a), 8.

9. Not raised in motion to remove nonsuit and for grant of new trial, but raised in memorandum in support thereof, pp. 22-29. Raised in concise statement as item 1(e).

10. Concise statement, items 1(f), 2(c).

11. Concise statement, items 3, 4, 5(b).

(e) Whether this court erred by basing its decision on finding of a lack of mutual obligation between the employer and employees;[12]

(f) Whether, in light of the handbook, the custom, practice and policies of the company, and all other attendant circumstances, this court erred in concluding the parties did not create a contract implied in fact;[13] and

(g) Whether this court erred in concluding the conduct of the parties did not create a contract implied in law.[14]

This section addresses these issues *seriatim.*

(a) *Whether the court erred in concluding plaintiff failed to prove the handbook did not create an employment contract not terminable at-will*

Since this court must interpret all evidence and inferences drawn therefrom in the manner most favorable to plaintiff, this court must accept plaintiff's testimony that he received a handbook in 1977, even though defendant denies issuing a handbook prior to 1981. However, plaintiff has not offered any evidence proving or implying that the terms of the 1977 handbook were more favorable than those of the 1981 handbook. Therefore, this court must assume that the relevant provisions concerning discharge for just cause and defendant's right to unilaterally change its policies were the same in both versions.

---

12. Concise statement, items 2(a), 5(c).

13. Not raised in concise statement, but raised in motion to remove nonsuit and for grant of new trial, ¶¶1 ab, ag, ah.

14. Not raised in motion to remove nonsuit and for grant of new trial, but raised in Count V of plaintiff's complaint, and in items 1(f) and 2(b) of the concise statement.

"The law in Pennsylvania is abundantly clear that, as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason, or for no reason." *Stumpp v. Stroudsburg Municipal Authority,* 540 Pa. 391, 396, 658 A.2d 333, 335 (1995); *Highhouse v. Avery Transportation,* 443 Pa. Super. 120, 124, 660 A.2d 1374, 1376 (1995).

While plaintiff argues the court erred in not allowing the jury to determine whether the handbook created a valid obligation on the part of the employer, interpreting a handbook to determine its legal meaning is a question of law reserved for the court. *Martin v. Capital Cities Media Inc.,* 354 Pa. Super. 199, 214, 221-22, 511 A.2d 830, 838, 841 (1986). A term of employment "should be presumed to be 'at-will' unless an intent to alter the at-will relationship is clearly stated in the handbook." *Id.* at 220, 511 A.2d at 841. A handbook gives rise to an enforceable obligation on the part of the employer only if a reasonable person in the employee's position would interpret the handbook's provisions as an offer supplanting the at-will rule. *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 90, 97, 545 A.2d 334, 337 (1988).

In *Martin,* the Superior Court affirmed the trial court's entry of summary judgment against plaintiff's claim that her former employer discharged her contrary to policies set forth in the employer's handbook. Unlike the handbook in the instant case, the handbook in *Martin* did not state that the employer would not discharge its employees without just cause, although it did set forth a non-exclusive list of acts that would represent cause for disciplinary action against employees. *Id.* at 208-209, 511 A.2d at 835. The handbook in *Martin* included examples of just cause such as dishonesty, fighting, unexcused absences or tardiness, drug use on

the job, and refusals to perform work, among others. *Id.*

The Superior Court noted two features of the handbook that supported the trial court's conclusion that the handbook did not create a legal obligation on the part of the employer. First, the list of actions that could result in disciplinary actions was not exclusive, but rather served an illustrative, informational purpose. *Id.* at 214, 511 A.2d at 838. Second, the handbook stated that the employer reserved the right to alter the policies in the handbook unilaterally. *Id.* Based on these features, the court found that the plaintiff could not reasonably have expected that the employer intended to bind itself to the provisions in the handbook. *Id.* at 215, 511 A.2d at 838. Without a reasonable manifestation of an intention to be bound, the Superior Court concluded the handbook gave rise to no obligation on the part of the employer.

In the instant case, the handbook states that the list of offenses constituting just cause for discharge is not exclusive, but illustrative: "Some examples of just cause are excessive tardiness, absenteeism, insubordination, dishonesty, pilferage, incompetence, inefficiency, intoxication, use of drugs on the job, attempting to influence fellow employees to limit production, and deliberately damaging company property or injuring a co-worker." And while plaintiff argues defendant failed to disclaim any contractual intention in the handbook,[15] the preface to the handbook clearly reserves the employer the right to make unilateral changes: "Since [the handbook] is looseleaf, we will be able to add and replace sections to keep it current as changes occur—as they inevitably will." The handbook in the in-

---

15. Motion to remove nonsuit and for grant of new trial, ¶1 c.

stant case resembles the one in *Martin* in both aspects considered material by the Superior Court. Following the precedent established by *Martin,* the court properly found that the handbook in this case did not reasonably indicate to an employee that the employer intended to bind itself to the policies therein. Therefore, this court properly denied the motion to remove the judgment of nonsuit.

Plaintiff's supplementary memorandum in support of the motion asserted that because the handbook discusses "pretty much every conceivable concern that would arise" in the employment relation, one could not conclude that an employee would not reasonably believe the handbook created binding obligations on the employer. In support of this proposition, plaintiff cited the *Martin* opinion. The handbook in *Martin,* however, was also comprehensive in scope. *Id.* at 214, 511 A.2d at 838. Nevertheless, the Martin court stated, "[i]t is perfectly reasonable to say that this document 'covers' the employment relationship. It is, however, a quantum leap in logic to assert that because the handbook in some way 'covers' the employment relationship, the terms of the handbook limit discharges for objective just cause only." *Id.* at 215, 511 A.2d at 838.

Plaintiff may attempt to distinguish *Martin* by the fact that in *Martin* the issue was whether an employee handbook modified the status of an employee initially hired at-will, while this case concerns an employee who claims he was initially hired on terms that precluded defendant from discharging him without just cause. This would constitute a distinction without difference, as courts employ the same standard for reviewing both types of claims. See *Scott, supra* at 97, 545 A.2d at 337 (citing *Martin* for the proposition that a provision in a handbook is enforceable only if a reasonable em-

ployee would interpret the provision as supplanting the at-will rule).

Plaintiff may also attempt to distinguish *Martin* by pointing to the fact that the employer's handbook in that case guaranteed employees would not be disciplined without just cause, but did not expressly state they could not be discharged without just cause. *Id.* at 216, 511 A.2d at 838-39. This merely marks another distinction without difference, as subsequent cases have directly addressed the issue of whether an employer's oral or written statement has overcome the at-will presumption, and in addressing this issue, have employed the *Martin* court's standard requiring a clear statement from an employer to rebut the at-will presumption.

For example, in *Stumpp, supra,* an employer wrote a letter to its employee that read, in pertinent part, "if you wish to retain this position until you retire, please advise the authority board, so that we can schedule an executive session to discuss the salary." *Id.* at 393, 658 A.2d at 334. Less than a year after the plaintiff-employee accepted the position, the defendant-employer fired him, and the plaintiff sued for wrongful discharge. *Id.* The Supreme Court opined that "it is very questionable whether the authority's words could be reasonably construed to be an offer for a definite term of employment . . . ." *Id.* at 396, 658 A.2d at 335. See also, *Scott, supra* (oral promise that her employment would be "permanent" held insufficient to rebut presumption of at-will employment); *Marsh v. Boyle,* 366 Pa. Super. 1, 530 A.2d 491 (1987) (employer's promise that plaintiff would hold position "at least two years" too vague to rebut the at-will presumption); *Murphy v. Publicker Industries Inc.,* 357 Pa. Super. 409, 516 A.2d 47 (1986) (promise of lifetime employment not definite enough to overcome the at-will

presumption); *Veno v. Meredith*, 357 Pa. Super. 85, 515 A.2d 571 (1986) (employer's statement to employee that "I want us to retire together" too vague to rebut the at-will presumption); *Darlington v. General Electric*, 350 Pa. Super. 183, 504 A.2d 306 (1986) (employer's statement that employee was hired to work on "long-range project" too vague to overcome the at-will presumption). Compare *Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa. Super. 49, 537 A.2d 814 (1987) (written offer to reassign employee, rather than discharge him, if evaluation showed unsatisfactory performance, held sufficient to obligate employer to reassign employee for reasonable period before discharging).

(b) *Whether the court erred in concluding the issuance of the October 1981 handbook did not modify plaintiff's at-will employment status to one in which he could not be discharged without just cause*

Plaintiff asserts that even if the 1977 handbook did not create an enforceable obligation on defendant to employ him for a definite term, such an obligation arose from the handbook issued in October 1981. Assuming the 1981 handbook created a new just-cause provision, the facts of this case would closely resemble those in *Martin*. In that case, the defendant newspaper initially hired the plaintiff as an at-will employee, and later issued a handbook providing that disciplinary action would not be imposed without just cause. *Id.* at 202, 511 A.2d at 831. The *Martin* opinion reasoned that:

"Appellant had been hired as an at-will employee. To now hold that the handbook allowed her discharge only for just cause would, in effect, convert her into

an employee with a contract for an indefinite term who could be fired only for objective just cause. This would be a modification of immense proportions. For such an extreme modification of a preexisting contract, we would require a clear statement of an intent to so modify." *Id.* at 215, 511 A.2d at 838.

This quotation shows that the standard for determining whether a handbook modifies an at-will employment relation is identical to that used to determine whether an employee was initially hired on an at-will basis. Thus, the contractual provision and the legal standard to be applied are the same as those in the subsection above. Therefore, the result must be the same: plaintiff's claim fails and the judgment of nonsuit was properly entered.

(c) *Whether the court erred in determining that plaintiff's reliance upon the handbook did not estop defendant from discharging plaintiff*

Plaintiff asserts that defendant is liable to him based on the theories of promissory estoppel or equitable estoppel. The Pennsylvania Supreme Court has held that "[t]he doctrine of equitable estoppel is not an exception to the employment at-will doctrine. An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise." *Paul v. Lankenau Hospital,* 524 Pa. 90, 95, 569 A.2d 346, 348 (1990).

With regard to promissory estoppel, the Supreme Court's decision in *Delaware Valley Medical Center v. Niehaus,* 429 Pa. Super. 119, 631 A.2d 1314 (1993), *reversed,* 538 Pa. 431, 649 A.2d 433 (1994) holds that this theory is also insufficient to overcome the at-will doctrine. In *Niehaus,* the defendant employer promulgated a handbook setting forth company policy. *Id.*

at 121, 631 A.2d at 1315. The handbook stated that if the employer approved an employee's written request for a leave of absence, the employee, at the end of the period, would be reinstated to a position similar to that held prior to the leave of absence. *Id.* In *Niehaus,* the plaintiff employee received permission from her employer to take a nine-month leave of absence. *Id.* The employer subsequently refused to reinstate the employee. *Id.*

The plaintiff sued on the theory that the employer was estopped from acting other than as set forth in the handbook. The trial court dismissed the case, but the Superior Court held that the plaintiff had stated a valid cause of action based upon promissory, as distinguished from equitable estoppel. *Id.* at 133 & n.3, 631 A.2d at 1317 & n.3. In a one-sentence opinion, the Supreme Court stated only that the decision of the Superior Court was reversed. Since the only issue before the court was whether the doctrine of promissory estoppel constituted an exception to the employment at-will rule, *Niehaus* necessarily stands for the proposition that no such exception exists.

(d) *Whether the court erred in finding plaintiff's acceptance of his new position did not constitute additional consideration creating an employment contract not terminable at-will*

After working for defendant as manager of nuclear engineering, plaintiff accepted a newly created position, technical director, in 1985. Defendant told plaintiff he was the candidate most qualified for the new position. Although the position did not entail an increase in compensation, plaintiff considered it a promotion. In 1986, plaintiff's supervisor told him his position had been

eliminated due to financial constraints, and discharged him.

Plaintiff now claims that his transfer to the new position provided consideration flowing from him to his employer, thus rebutting the presumption that he remained an employee at-will. The rule established by the Pennsylvania Supreme Court, however, provides that an employee cannot overcome the at-will presumption without proving he has furnished consideration *in addition to* the services for which he was hired. *Stumpp, supra.*

In *Stumpp,* an employee had held a position of manager of the Stroudsburg Municipal Authority. *Id.* at 393, 658 A.2d at 334. Due to his poor performance, his employer sent him a letter that stated he would no longer retain that position, but that he could assume the position of manager of the water treatment plant. *Id.* The letter stated that "if you wish to retain this position until you retire, please advise the authority board, so that we can schedule an executive session to discuss the salary." *Id.* The authority discharged the appellant less than a year after he accepted the new position. *Id.* The employee sued the employer for wrongful discharge, but the trial court dismissed the suit for lack of jurisdiction, based on the conclusion that the employer did not have the legal authority to enter into a contract for employment. *Id.* On appeal, the Pennsylvania Commonwealth Court reversed the trial court, finding both that the employer possessed the authority to enter into an employment contract, and that the letter from the employer constituted an implied contract for employment. *Id.*

The Supreme Court reversed the Commonwealth Court on both issues. After declaring that the employer was a local government agency lacking the power to

enter into an employment contract, the Supreme Court addressed the issue of whether the letter imposed an enforceable obligation on the authority to employ the plaintiff for a definite term. *Id.* at 396, 658 A.2d at 335. The court stated the rule that an employee must provide the employer with consideration other than the services for which he was hired, and explained that "[a]dditional consideration exists when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform." *Id.*

The Supreme Court reviewed the plaintiff's claim that he gave up something of value in exchange for the inferior position, and found this insufficient to constitute consideration in exchange for a promise of employment for a definite term. *Id.* In the instant case, plaintiff's position is weaker than that of the plaintiff in *Stumpp,* because plaintiff testified he considered his new position a promotion. Thus, the offer of the new position and plaintiff's acceptance thereof were mutually supported by consideration, in that plaintiff obtained what he considered to be a better position, and defendant was able to place the most qualified candidate in the slot.

Even accepting his other testimony that the position was merely a lateral transfer, plaintiff's acceptance of the position would not constitute a benefit to the employer unsupported by a benefit to plaintiff, since plaintiff obtained a position he preferred for non-monetary reasons. Neither did the acceptance of the new position consititute a hardship to plaintiff, since he was fully compensated for his services. While plaintiff may argue that he gave up job security in exchange for the new

position, he testified that no one discussed that issue when he took the position. This shows that it was merely fortuitous that he accepted a new position that was less secure than the old one. Therefore, plaintiff's claim fails as a matter of law, and the judgment of nonsuit was properly granted.

Count III of plaintiff's complaint raises a similar issue, by averring that when he accepted employment initially he gave up substantial benefits by agreeing to surrender his intellectual and property rights in inventions developed by him in the course of his employment, and to refrain from engaging in conflicts of interest with his employer.[16] The Superior Court, however, has held that written agreements in which employees give employers rights to inventions and promise not to divulge the employers' secrets do not constitute additional consideration sufficient to overcome the at-will presumption. *Scott, supra* at 99-100, 545 A.2d at 338. Therefore, this claim fails as a matter of law, and the judgment of nonsuit was properly entered.

(e) *Whether this court erred by basing its decision on a finding of a lack of mutual obligation between the employer and employees*

Plaintiff's memorandum in support of his motion to remove nonsuit relied heavily on *Banas v. Matthews International Corp.,* 348 Pa. Super. 464, 502 A.2d 637 (1985). The *Banas* opinion discusses cases such as *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), in which the courts of other jurisdictions abrogated the at-will rule. *Id.* at 483-84, 502 A.2d at 647. The *Banas* opinion openly

16. Complaint, ¶¶31, 32.

acknowledges that the discussion is dictum. *Id.* Nevertheless, the opinion goes on to say, in a passage quoted at length by plaintiff, *"If* the handbook had contained, if not expressly at least by clear implication, a just cause provision, *then* appellee's claim might have merit; indeed, it *would* have merit if this court were to decide to accept and follow the reasoning of cases such as *Toussaint* . . . ." *Id.* at 485, 502 A.2d at 647-48. (emphasis in original) (footnote omitted)

*Toussaint* holds that a handbook published by an employer may create a unilateral contract accepted by employees through their continued performance of their ordinary job duties. *Toussaint, supra,* 292 N.W.2d at 892. Plaintiff argues this court erred by basing its decision on a finding of a lack of mutual obligation between the employer and employees. As the discussion above shows, the court's conclusion that the handbook did not create binding obligations on the defendant did not depend on a finding of a lack of mutual obligation. Rather, the court concluded the handbook did not create any enforceable promises because it lacked sufficient clarity, based on its failure to limit the meaning of the term "just cause," and its reservation of the power to change handbook provisions at any time. Consequently, this allegation of error fails.

Plaintiff correctly cites *DiBonaventura v. Consolidated Rail Corp.,* 372 Pa. Super. 420, 539 A.2d 865 (1988) and *Greene v. Oliver Realty Inc.,* 363 Pa. Super. 534, 526 A.2d 1192 (1987), for the proposition that the Superior Court has dismissed the requirement of mutuality of obligation with regard to contracts created by the publication of employee handbooks. However, the Pennsylvania Supreme Court recently held in *Stumpp* that an employer's written offer of a definite term of employment will not bind the employer unless supported

by consideration from the employee in addition to the employee's services for which he or she was hired. *Id.* at 396, 658 A.2d at 335. In *Stumpp,* the Supreme Court has implicitly rejected the rationale underlying *Toussaint:* if an employer's offer of employment for a definite term is not enforceable absent additional consideration from the employee, then a unilateral contract predicated upon acceptance by performance of the employee's ordinary duties cannot be enforceable. Consequently, even if the defendant's handbook did contain a sufficiently definite offer that it would not discharge plaintiff without just cause, such a promise would be unenforceable due to plaintiff's failure to provide consideration other than the services for which he was hired. Therefore, plaintiff was properly nonsuited, and the judgment should stand.

(f) *Whether, in light of the handbook, the custom, practice and policies of the company, and all other attendant circumstances, this court erred in concluding the parties did not create a contract implied in fact*

Plaintiff asserts that, considering the handbook together with the course of conduct of the defendant, the parties created a contract implied in fact. An implied contract does not arise unless both the employer and employee intend to form one. *Holewinski v. Children's Hospital of Pittsburgh,* 437 Pa. Super. 174, 179, 649 A.2d 712, 715 (1994). In order to establish such a contract, the employee must receive a definite offer from the employer. *Id.* This standard is the same one employed by the courts to determine whether a policy in a handbook gives rise to an obligation on the part of the employer. As discussed above, none of the written statements or acts in evidence constitutes a clear offer

of employment for a definite term. Therefore, this theory of liability fails.

#### (g) *Whether this court erred in concluding the conduct of the parties did not create a contract implied in law*

Plaintiff contends that defendant's conduct created a contract implied in law. The law implies a contract between parties when a plaintiff establishes a case for unjust enrichment. *Chesney v. Stevens,* 435 Pa. Super. 71, 80, 644 A.2d 1240, 1244-45 (1994). This relation is known as a quasi-contract or a contract implied in law, and requires that the defendant need only make restitution to the plaintiff for the benefit conferred. *Id.* In this case, the facts show that the plaintiff did not confer a benefit to defendant, nor undergo a hardship, other than performing the services for which he was hired. Consequently, the conduct of the parties did not establish a contract implied in law. Therefore, as a matter of law, this claim fails, and the judgment of nonsuit was appropriate.

#### 2. Whether the Court Erred in Concluding That Just Cause Is Not Limited to Employee Misconduct, but May Also Include a Decision by an Employer To Trim Its Workforce

This court impliedly concluded that if defendant terminated plaintiff's employment for no other reason than to improve its profitability in the face of shrinking revenues, such action would constitute a discharge with just cause. However, because plaintiff never rebutted the presumption of at-will employment, this court never needed to establish the parameters of just cause. Hence, this issue is moot.

### 3. Whether Plaintiff's Claim for Fraud Was Properly Nonsuited

A false representation is fraudulent only when clear and convincing evidence establishes that the speaker made it knowingly, with intent to deceive or in reckless disregard for the truth or falsity of the matter. *Cashdollar v. Mercy Hospital,* 406 Pa. Super. 606, 617, 595 A.2d 70, 75 (1991). In this case, plaintiff presented no evidence whatsoever regarding this crucial element of *scienter.* Hence, plaintiff has failed to prove, directly or by inference, a material element of his claim of fraud. Consequently, the court did not err by granting a judgment of nonsuit with respect to this count.

### CONCLUSION

Based on the reasons discussed above, this court did not err in granting a judgment of nonsuit on all counts of plaintiff's complaint. Therefore, this court's order denying plaintiff's motion to remove the nonsuit should be affirmed.